UNITED STATES of America,
Plaintiff-Appellee,

v.

Geronimo Jose GARCIA, Asnaldo San-
chez, a/k/a "Hernando," and Jesus
Gonzalez, Defendants-Appellants.

No. 81–5705.

United States Court of Appeals,
Eleventh Circuit.

Dec. 19, 1983.

722

David Goodhart, Miami, Fla., for Garcia.

Carl L. Masztal, Miami, Fla., for Sanchez.

Linda L. Carroll, Russell Spatz, Miami, Fla., for Gonzalez.

Stanley Marcus, U.S. Atty., Caroline Heck, Sonia Escobio O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS *, District Judge.

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

KRAVITCH, Circuit Judge:

The defendants, Gonzalez, Sanchez and Garcia, were convicted by a jury of conspiracy to knowingly and intentionally import marijuana into the United States in violation of 21 U.S.C. §§ 952(a) and 963. The government's case primarily consisted of testimony by DEA agents who had posed as marijuana "offloaders." The agents were part of a long-term undercover operation known as Operation Grouper investigating the narcotics trade in the Bahamas and South Florida. These agents testified at trial to a number of meetings with the defendants and other coconspirators where arrangements were discussed to import marijuana into the United States from Colombia via the Bahamas.

Defendants Gonzalez and Sanchez argue on appeal that their convictions violated the double jeopardy protections of the fifth amendment. Defendant Garcia contends that the district court erred in not granting his motions for severance and mistrial.

## I. The Double Jeopardy Claims

Gonzalez and Sanchez had been convicted in a prior trial on charges relating to a cocaine conspiracy which also had arisen out of Operation Grouper. The defendants argued at trial and now on appeal that their present conviction for the marijuana conspiracy constitutes double jeopardy, because the cocaine and marijuana conspiracies were actually only segments of one overall conspiracy to import drugs into the United States.

The defendants first made their motion to dismiss the charges on double jeopardy grounds after the jury had been cho-sen and sworn. At the trial judge's request, a written motion was filed and orally argued before the court. The trial judge denied the motion without prejudice for renewal. The defense renewed their motion at the conclusion of the government's case, as part of a motion for acquittal or new trial, and at the sentencing hearing. The motion was denied each time. Neither before nor during the trial did the defendants request a separate evidentiary hearing on their double jeopardy claim.[1]

The defendant bears the initial burden of establishing a prima facie nonfrivolous double jeopardy claim. If he makes the necessary showing, the burden of persuasion then shifts to the government to demonstrate that the indictments actually charged separate crimes. United States v. Stricklin, 591 F.2d 1112, 1118 (5th Cir.1979). The defendant's prima facie showing is usually made at a pretrial hearing through the use of indictments, record materials, testimony, and other evidence normally available to him.[2] Id. Like a pretrial suppression hearing, the double jeopardy hearing allows the defendant to testify and disclose matters without fear that the evidence will be used against him at the ensuing trial. Id. (relying on Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

Although failure to request a pretrial hearing does not constitute a procedural bar to hearing the double jeopardy claim on appeal,[3] the defendant must still have introduced sufficient evidence at trial to establish a prima facie claim. This burden was not met here. Defense counsel did not introduce into evidence either the record or

---

1. Defense counsel suggested at oral argument that a pretrial hearing was not possible because the guilty verdict in the cocaine conspiracy case was not rendered until the marijuana conspiracy trial had already commenced. The argument is without merit, however, for if the two conspiracies were in fact one, double jeopardy would bar the second trial regardless of whether the defendants were convicted or acquitted in the first trial. See, Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

2. An evidentiary hearing, however, is not required unless the defendant has proffered evidence showing a nonfrivolous double jeopardy claim. United States v. Sturman, 679 F.2d 840, 844 (11th Cir.1982), cert. denied, —— U.S. ——, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983).

3. Cf. United States v. Bradsby, 628 F.2d 901, 905–06 (5th Cir.1980) (failure to object to multiplicitous indictment before trial does not waive right to later challenge multiple sentences); F.R.Crim.P. 12(b)(2) advisory committee note.

the indictments in the cocaine conspiracy case, leaving only the unproved allegations in their motions and the testimony of the trial witnesses to make a prima facie showing. Not surprisingly, the government carefully avoided eliciting from the DEA agents any testimony referring to the cocaine conspiracy, and no such testimony was brought out on cross-examination by the defendants. Neither of the defendants took the stand. Thus, the record on appeal, to which we are confined as a reviewing court, *Smith v. United States,* 343 F.2d 539 (5th Cir.1965),[4] falls far short of establishing a prima facie claim of double jeopardy. *See United States v. Futch,* 637 F.2d 386 (5th Cir. Unit B) (1981)[5] (outlining factors to be proved to show only one conspiracy existed);[6] *United States v. Marable,* 578 F.2d 151 (5th Cir.1978) (same).

## II. *The Motions for Severance and Mistrial*

Defendant Garcia, who was not a defendant in the cocaine conspiracy trial, argues that the district court erred on several grounds in admitting coconspirator statements into evidence and in not granting his motions for severance and mistrial. He first contends that any coconspirator statements made after February 22, 1979, the date when the conspiracy hierarchy was "reorganized," were inadmissible as to him because no substantial evidence existed linking him to the reorganized conspiracy. He next argues that even if his involvement did not end on February 22nd, any coconspirator statements after April 18, 1979 were inadmissible because his particular mission to recover marijuana stolen on Moor's Island in the Bahamas was abandoned on that date. Finally, he challenges the admission of a statement by coconspirator Fuentes, arguing that it was not made in furtherance of the conspiracy.

Hearsay statements of alleged coconspirators are admissible only if the government presents substantial, independent evidence showing: (1) that a conspiracy existed, (2) that the defendant and declarant were both members of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy, *United States v. James,* 590 F.2d 575, 581 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); *United States v. Yonn,* 702 F.2d 1341 (11th Cir.1983). For a trial court to find that substantial, independent evidence of a conspiracy was shown, there must be "at least enough [evidence] to take the question to the jury." *James, supra* at 581 (quoting, *U.S. v. Nixon,* 418 U.S. 683, 701 n. 14, 94 S.Ct. 3090, 3104 n. 14, 41 L.Ed.2d 1039 (1974)). The trial court's finding is a factual determination, *United States v. Perry,* 624 F.2d 29, 30 (5th Cir.1980), subject to reversal only if clearly erroneous. *United States v. Bulman,* 667 F.2d 1374, 1379 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982).

Here, the district court held a pretrial *James* hearing and, based on the facts the government proposed to prove, initially determined that the substantial, independent evidence test was satisfied. At the conclusion of the government's case the court reaffirmed its determination, finding the evidence of a conspiracy and the defendants' participation "overwhelming." After reviewing the record, we affirm the district court's finding as not clearly erroneous.

Garcia's argument that his role in the conspiracy ended on February 22, 1979

---

4. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

5. The Eleventh Circuit has adopted as binding precedent decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

6. There are five factors to consider in determining whether the two charged conspiracies are in fact one: (1) overlap in time; (2) persons common to both conspiracies; (3) similarity of the charged statutory offenses; (4) the nature and scope of the activity to be punished in each case; and (5) similarity in geography. *United States v. Futch,* 637 F.2d at 389–90.

when the leadership of the conspiracy was reorganized is flawed for several reasons. First, as late as April 6, 1979, the agents had met with Garcia and discussed his plans to recover 54,000 pounds of marijuana which had been stolen on Moor's Island in the Bahamas after being brought in from Colombia by the freighter PATRICIA. Garcia had already made several trips to Moor's Island after February 22nd in an attempt to recover the marijuana. Second, the agents' testimony concerning the "reorganization" of the conspiracy pertained only to the leadership of the conspiracy and did not suggest that Garcia was no longer a part of the conspiracy. The agents were merely told to deal subsequently with a new "top three." That Garcia was not one of the leaders is irrelevant, as an individual cannot escape criminal responsibility merely because he played a minor role in the conspiracy. *United States v. Alvarez*, 625 F.2d 1196, 1198 (5th Cir.1980) (en banc); *United States v. Wilson*, 500 F.2d 715, 724 (5th Cir.1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

Garcia next argues that his involvement in the conspiracy ended on April 18, 1979, when Sanchez told the agents to abandon their attempts to recover the marijuana stolen from the PATRICIA on Moor's Island and begin concentrating on bringing in new loads from Colombia. Garcia contends that because all of his activities were oriented around the PATRICIA shipment, no coconspirators' statements referring to later schemes to import marijuana should have been admitted against him.

We reject Garcia's attempt to separate the marijuana operation into discrete conspiracies. The government established a general conspiracy to import marijuana from Colombia into the United States via the Bahamas, and the PATRICIA shipment was but the first of a number of shipments of marijuana the agents were to unload. To be convicted of conspiracy a defendant need not "know each of the other coconspirators or be privy to the details of each enterprise comprising the conspiracy so long as he knows of the conspiracy and associates himself with it." *United States v. Ochoa*, 609 F.2d 198, 202 (5th Cir.1980).

A defendant's involvement as a conspirator may be shown through knowledge of the conspiracy and association with coconspirators combined with other circumstantial evidence. *United States v. Grassi*, 616 F.2d 1295, 1301 (5th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980). Here, there was ample evidence from which it reasonably could have been inferred that Garcia was aware of the general conspiracy and associated himself with it: he was at the December 4, 1978 meeting between the leaders of the conspiracy and the agents; he agreed to accompany the agents on their boats to unload the marijuana off the PATRICIA; and he subsequently made several attempts to recover the 54,000 pounds of marijuana that were stolen on Moor's Island. Furthermore, the defendant bears the burden of proof to show that he withdrew from the conspiracy by affirmatively acting to defeat or disavow the conspiracy, *United States v. Quesada-Rosadal*, 685 F.2d 1281 (11th Cir.1982), and Garcia has made no such showing here. We thus conclude that although Garcia's active participation may have been limited to the PATRICIA shipment, there is no evidence that his association with the general conspiracy ended on April 18, 1979.

Finally, Garcia challenges the admission of a statement by coconspirator Fuentes on January 30, 1981 regarding his losses in narcotics deals, totaling 760,000 pounds of marijuana worth 900,000,000 pesos. A piece of paper on which 900,000,000 pesos had been written by Fuentes was also admitted into evidence. Garcia contends that the statement was not made in furtherance of the conspiracy and, because of its prejudicial impact, the court erred in not granting his motion for a severance or mistrial.

Whether to grant a severance is within the sound discretion of the district court, balancing the potential prejudice to the defendant against the public interest in joint trials. *United States v. Berkowitz*, 662 F.2d 1127, 1132 (5th Cir. Unit B) (1981). Defense counsel objected at trial to the

admission of the statement and the piece of paper, and the court heard arguments outside the jury's presence. The court ruled the evidence admissible on the grounds that the statement was made in an attempt to further involve the agents in the conspiracy and that it was relevant to proving the intent of the conspirators to import marijuana. We agree with the district court that the context of the statement indicates it was intended to further involve the agents in the conspiracy and thus was properly admissible against all the coconspirators, including Garcia. *James, supra.* Because the statement was properly admitted into evidence, the district court did not abuse its discretion by denying Garcia's motion for a mistrial or severance.

The district court's judgment is AFFIRMED.