**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Hector HERNANDEZ CAMACHO, Defendant-Appellant.**

No. 85–2329.

United States Court of Appeals, Fifth Circuit.

Dec. 27, 1985.

James Folsom, Corpus Christi, Tex., (Court Appointed), for defendant-appellant.

Henry K. Oncken, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S.

Attys., Houston, Tex., for plaintiff-appellee.

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

When passing sentence, the judge expressly considered, over the defendant's objection, testimony that the defendant had given at a hearing on his motion to suppress evidence assertedly seized in violation of his fourth amendment rights. We reject the argument that the sentencing judge violated the defendant's constitutional rights by considering the testimony that the defendant offered at the suppression hearing. We decline to expand the rule announced in *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), so as to apply that rule to the sentencing phase of criminal proceedings.

## I

Stopped at a permanent Border Patrol checkpoint near Falfurrias, Texas, defendant Hector Hernandez Camacho responded to questions regarding his citizenship. The Border Patrol Agent asked Camacho to open the trunk of his car and when he did so marijuana was found. Indicted for possession with intent to distribute some seventy pounds of marijuana in violation of 21 U.S.C. § 841(a)(1), Camacho moved to suppress the evidence on the ground that the search lacked probable cause.

At the suppression hearing, the arresting officer explained that as he approached the car he smelled marijuana and for that reason asked Camacho to open its trunk. Camacho sought to discredit the officer's testimony by explaining why the marijuana would have been difficult to smell: he gave a detailed account of the careful manner in which he had wrapped the contraband and described an elaborate soaking and deodorizing procedure that he had used in order

to avoid getting caught by the police. The district judge expressly credited the testimony of the agent and rejected Camacho's argument that the contraband had been rendered undetectable. The judge, however, apparently believed Camacho's assertion that he had made a sophisticated *attempt* to avoid giving the police probable cause to search his car:

> The defendant is an experienced drug dealer based upon his own testimony today....
>
> Because my memory is faulty ..., I would like to make this note: ... that at testimony in this case the defendant gave to the Court examples of his own past experience about drug dealing; that is to say, his knowledge of how to wrap marijuana, knowledge of what he normally had done in the past, knowledge of how to cure marijuana in the past, all of which indicates to the Court that this is not a first time offender. The Court does not know what the record is of the defendant, but we'll look at this time to see if there are any previous convictions.

At Camacho's sentencing hearing, the defense attorney and Judge Head engaged in the following discussion:

> MR. FOLSOM: Your Honor, there is something else that [Camacho] objects to. It's not in the presentence report, but we had a motion to suppress hearing, Your Honor, and at that hearing, the Court made certain determinations that he was a known drug dealer. The defendant feels that the Court disbelieved his story.
>
> THE COURT: I did.
>
> MR. FOLSOM: As to the packaging of it.
>
> THE COURT: No, I believed everything he said. I just believe that he's wrong.
>
> MR. FOLSOM: I understand, Your Honor, but what I'm saying is he feels and I think legally what he's talking about, he was put on for the specific purpose of the motion to suppress and he doesn't feel that legally you have a right to

consider that evidence in your sentencing.

THE COURT: That's crazy.

MR. FOLSOM: I'm pointing it out to the Court.

THE COURT: At least I think it's crazy. I may be wrong, but I don't think so. I believe I'm entitled to consider everything I know about that comes into my information. The fact that [Camacho] said it makes it even stronger than if somebody else said it. . . .

When imposing Camacho's sentence, Judge Head made the following comments:

In addition to [a record of prior criminal convictions], I'm definitely going to consider the testimony that you put on in this Court concerning your expertise with the packaging and sale of marijuana.

This was obviously not your first offense. You described in great detail how to cure and wrap marijuana to such degree that you could not be detected. It is a matter to which you gave great forethought with obvious experience and you, sir, I'm sorry, but you leave me no opportunity. You are sentenced to five years in the custody of the attorney general and you have a ten year special parole term.

## II

In *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), the Supreme Court held that the testimony of a defendant, given at a hearing on a motion to suppress evidence assertedly seized contrary to the fourth amendment, cannot be admitted over the defendant's objection at trial on the issue of guilt. In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Court concluded that the fifth amendment protection against the use of compelled self-incriminating testimony at trial also forbids using such evidence in the sentencing phase of a capital case. Pointing to the *Estelle* Court's view that fifth amendment incrimination can occur at both the guilt and sentencing phases, Camacho argues

that extension of fifth amendment protection to sentencing proceedings in *Estelle* requires the extension of *Simmons* protection as well. We disagree.

–1–

We begin by noting that *Estelle v. Smith* is inapposite. In *Estelle,* the trial court *sua sponte* ordered a psychiatric competency examination of a prisoner even though the defendant had not raised any issue of competency or insanity; the defendant's lawyer was apparently not advised about the psychiatric examination and the prisoner was not given a *Miranda* warning. In these "distinct circumstances," 451 U.S. at 466, 101 S.Ct. at 1875, the Supreme Court concluded that the defendant's fifth amendment privilege was implicated and that the results of the psychiatric examination could not be used by the state in an effort to obtain the death penalty.

By contrast, the defendant in this noncapital case voluntarily took the stand at the suppression hearing and tried, as persuasively as he could, to convince the judge that he had found a way to outwit the police and succeed in his criminal enterprise. The undoubted fact that Camacho had an *incentive* to offer this testimony at his suppression hearing does not imply that the testimony was *compelled* within the meaning of the fifth amendment. Rather, Camacho's eagerness to show his sophistication in crime was just another strange side-effect of the fourth amendment exclusionary rule, which, regardless of its ultimate wisdom, punishes the government for its agents' acting on unfounded suspicions only when those suspicions prove to be *correct.*

We also note at the outset that the Supreme Court has declined to suggest that the relatively old *Simmons* rule is one that should logically be extended to the sentencing phase of a criminal proceeding. On the contrary, the Court has left open "the proper breadth of the *Simmons* privilege," and has cited without disapproval several cases in which prosecutors were allowed to use, for impeachment purposes at trial, a defendant's testimony at a suppression hear-

ing. *United States v. Salvucci*, 448 U.S. 83, 93–94 & n. 8, 100 S.Ct. 2547, 2553–54 & n. 8, 65 L.Ed.2d 619 (1980). *Cf. United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (illegally seized evidence may be used to impeach defendant's statements made in response to proper cross-examination).

Finally, we are mindful of the Supreme Court's recent expressions of its profound uneasiness with the "substantial social costs" of the fourth amendment exclusionary rule itself. *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 3412–13, 82 L.Ed.2d 677 (1984). The Court has rejected the suggestion that the exclusionary rule is "a necessary corollary" of the fourth amendment and has specifically denied that the rule is required by the conjunction of the fourth and fifth amendments. *Id.* The Court has also repeatedly declined to expand the scope or the application of the exclusionary rule. *See id.* 104 S.Ct. at 3414–16 (discussing cases). Indeed, *Leon* recognized a new *exception* to the exclusionary rule and emphasized the importance of performing a pragmatic cost/benefit analysis when considering the proper operation of the rule. Because the *Simmons* principle is only an ancillary rule that seeks to enhance the exclusionary rule's deterrent effects, it is doubly removed from the central purpose of the fourth amendment. The extension of *Simmons* proposed by the defendant in this case would be triply removed from the Constitution. After *Leon*, such a proposed extension of *Simmons* must carry a heavy burden of persuasion.

–2–

Discretion in imposing sentence is considerable and well-established:

It is surely true, as the Government asserts, that a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (citations omitted) (quoted with approval in *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980), and in *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978)). Furthermore, the exercise of this discretion is largely unreviewable on appeal. *Tucker*, 404 U.S. at 447, 92 S.Ct. at 591. While Congress has narrowed somewhat the sentencing judge's *range* of discretion in an effort to mitigate perceived disparities in sentencing, the nature of the discretion remains largely unchanged. The latitude given to the judge not only acknowledges the superior ability of the trial court to tailor the sentence to the defendant, but it is also a necessary, and perhaps inevitable, by-product of the nature of the sentencing decision itself. After the judge has collected all the relevant available information concerning a particular defendant, all the learning concerning the offense, and all the relevant principles of penology, the final call remains unquantifiable and essentially an intuitive judgment. In this critical sense, the imposition of sentence remains the ultimate judicial act. Rather like a jury's "black box" decision about a disputed question of fact, it is at its core the exercise of plain, and indeed unexplainable, power. We have attended this exercise of power with procedural protections that include the preparation of a presentence report, the mandatory right of allocution, and insistence that the district judge not rely upon demonstrably erroneous information. But the root principle is that the sentencing judge should be given access to all available information and that his sources should be limited only by the demands of accuracy. As one distinguished commentator put it: "The only real limitation on the information the judge may consider is that it is error if it can be shown that he relied on information that was in fact not true." 3 C. Wright, Federal Practice and Procedure § 526, at 94 (1982).

-3-

As the *Simmons* rule itself suggests, it would not be radically inconsistent with the principles of our legal system to conclude that a district judge—having heard a defendant's testimony at a suppression hearing and having gained, both from facts that transpired and from the demeanor of the accused, information highly relevant to the sentencing decision—should nonetheless put that information aside when considering what sentence to impose. Such self-blinding would not be wholly foreign to the district court, whose professional assignment frequently requires it to make decisions while removing highly relevant facts from the decisional calculus. The extension of *Simmons* proposed to us today could be defended by pointing to an unquestioned reality in criminal trials: allowing the sentencing judge to consider the testimony that a defendant gave at a suppression hearing imposes a cost on the defendant for his attempt to take advantage of the fourth amendment exclusionary rule. The *Simmons* Court, sensitive to this "undeniable tension" between protections associated with the fifth and fourth amendments, partially erased the defendant's dilemma by forbidding the prosecution to use a defendant's suppression-hearing testimony to prove his guilt at trial.

In considering the proposed extension of the *Simmons* rule, however, we must also be sensitive to legitimate concerns that compete with those that underlay the *Simmons* decision. Most obviously, perhaps, requiring the judge to ignore the defendant's own sworn testimony would disserve the goal of tailored and informed sentencing. Precisely because the testimony offered at these hearings often reflects badly on the defendant, it is apt to be especially reliable and highly relevant to the question of the appropriate punishment. *Cf. Stone v. Powell*, 428 U.S. 465, 490, 96 S.Ct. 3037, 3050, 49 L.Ed.2d 1067 (1976). To exclude this testimony from consideration—especially when, as here, it amounted virtually to a boast by the defendant about his practiced techniques at evading the law—would be "contrary to the idea of proportionality that is essential to the idea of justice" and would be likely to "generat[e] disrespect for the law and administration of justice." *Id.* at 490–91, 96 S.Ct. at 3050–51. Whatever marginal contribution the proposed rule might make to the deterrent purposes of the fourth amendment exclusionary rule, it is not worth this price.

We believe that these considerations are sufficient to justify rejecting any application of the *Simmons* rule to the sentencing phase of a criminal proceeding. In our circuit, however, as in several others, there is an additional anomaly that would be created by the proposed extension of *Simmons*. Had the evidence that was the subject of Camacho's testimony been suppressed on constitutional grounds, that evidence itself could nonetheless have been considered by the sentencing judge when deciding what punishment was appropriate. *See United States v. Butler*, 680 F.2d 1055, 1056 (5th Cir.1982); *see also United States v. Larios*, 640 F.2d 938, 941–42 (9th Cir. 1981); *United States v. Lee*, 540 F.2d 1205, 1210–12 (4th Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Schipani*, 435 F.2d 26, 28 (2d Cir.1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971). It would be an odd set of rules that allowed a sentencing judge to rely on evidence illegally obtained from a defendant while forbidding the same judge to consider the defendant's own sworn testimony about that evidence and the circumstances under which it was seized. Besides the peculiarities of the complex mental and psychological gymnastics that the judge would be asked to perform, such a selective exclusion of information would hardly make either the sentencing process or constitutional doctrine more rational. When one turns to cases, like the one at bar, in which the original seizure of the evidence was constitutionally proper, the notion of forcing the sentencing judge to ignore the defendant's testimony about the seizure takes on a surrealistic patina.

We conclude that the district court did not infringe defendant Camacho's constitutional rights when the court considered, for

purposes of deciding on a sentence, Camacho's testimony at the hearing on the motion to suppress evidence.

AFFIRMED.