STATE of Wisconsin, Plaintiff-Respondent,

v.

James R. SCHULTZ, Defendant-Appellant.†

Court of Appeals

*No. 88-0389-CR. Submitted on briefs October 10, 1988.—*
*Decided December 22, 1988.*

(Also reported in 435 N.W.2d 305.)

† Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Robert S. Duxstad* and *Ewald, Duxstad & Vale Law Offices,* of Monroe.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Sharon Ruhly,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. James Schultz appeals from a judgment of conviction of first-degree murder and from

an order denying his post-conviction motions. The issues are: (1) whether the trial court properly applied sec. 971.175, Stats.; (2) whether the state violated Schultz's right against self-incrimination by using his *Goodchild* testimony for impeachment purposes; (3) whether Schultz was denied effective assistance of counsel; and (4) whether Schultz is entitled to a new trial.[1] We resolve all issues against Schultz and affirm.

## FACTS

Schultz was convicted of the first-degree murder of his wife, Nancy Schultz. Police had found Schultz lying unconscious next to his dead wife in their carbon monoxide-filled garage. An autopsy revealed that although carbon monoxide poisoning had caused Nancy Schultz's death, before death she had received at least one blow to the head with a blunt object which may have rendered her unconscious. Schultz's five-year-old daughter testified that her mother and father had been fighting in the garage.

---

[1]Schultz also argues that the first court commissioner's dismissal of the complaint deprived the trial court of personal jurisdiction over him. Schultz never objected to the trial court's personal jurisdiction on this ground.

Below, Schultz's jurisdictional arguments were based on motions to dismiss an allegedly illegal arrest and the insufficiency of both the original and amended complaints. The court ruled against him on both these motions, and those rulings are not challenged to appeal. Schultz argues he preserved his objection to the trial court's personal jurisdiction over him. However, because he did not object on the specific grounds he now raises on appeal, he did not preserve this issue for appellate review, and therefore we do not address it. *Compare Holmes v. State,* 76 Wis. 2d 259, 271, 251 N.W.2d 56, 62 (1977) (party may appeal an adverse ruling on an objection to evidence only upon the specific grounds raised below).

Schultz pled not guilty and not guilty by reason of mental disease or defect and was tried pursuant to sec. 971.175, Stats., which provides for a bifurcated trial in such situations. After the first phase, the jury found him guilty of first-degree murder. Schultz withdrew his plea of not guilty by reason of mental disease or defect, and the trial court sentenced him to life imprisonment.

Schultz argues that the trial court followed the procedure outlined in sec. 971.175, Stats., and thereby denied him due process of law and equal protection of the laws. Since this question involves the interpretation of a statute, we review it de novo. *City of Waukesha v. Salbashian,* 128 Wis. 2d 334, 347, 382 N.W.2d 52, 56 (1986).

Section 971.175, Stats., provides:

> When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect, there shall be a separation of the issues with a sequential order of proof before the same jury in a continuous trial. The guilt issue shall be heard first and then the issue of the defendant's mental responsibility. The jury shall be informed of the 2 pleas and that a verdict will be taken upon the plea of not guilty before the introduction of evidence on the plea of not guilty by reason of mental disease or defect. This section does not apply to cases tried before the court without a jury.

We interpret this provision to require that both phases must be tried before a single jury, and that the jury must be informed of the insanity plea before the guilt phase of the trial. Schultz claims this deprives him of the presumption of innocence. In *State v. Sarinske,* 91 Wis. 2d 14, 29–30, 280 N.W.2d 725, 732

(1979), the supreme court rejected this argument, asserting that a properly instructed jury will follow instructions even where there are inconsistent pleas. Schultz's problem is similar to the "insoluble problem" of a defendant who asserts that a homicide was accidental or justified, i.e., that of "maintaining the latter stance without seeming to concede he did the killing." *Id.* at 30–31, 280 N.W.2d at 732–33. Like such defendant, Schultz is not entitled to a separate jury for each inconsistent defense he raises. *Id.* at 31, 280 N.W.2d at 733.

Schultz argues that *Sarinske* implied that where a defendant presents a substantial defense on the merits or where substantial prejudice would result from the same jury trying both issues, a defendant should be entitled to a second jury on the issue of his or her mental responsibility. We need not address these assertions because the essence of Schultz's argument on this issue is that the trial court prejudiced the jury against him by following the mandate in sec. 971.175, Stats. The trial court found otherwise.

The trial court granted Schultz's motion for individual and sequestered voir dire of potential jurors. At Schultz's post-conviction hearing, the trial court found that the "thorough searching voir dire process" on this issue cured any possibility of jury prejudice. The court noted that any "juror that had any problems or any difficulty" with the two pleas was "discovered and was, on motion, then released." On appeal, Schultz does not claim that this finding is clearly erroneous, but merely asserts that the jury must have been prejudiced against him, thereby denying him the presumption of innocence. Because Schultz shows no error we affirm as to this issue.

374

## Goodchild Testimony

Schultz claims that the trial court violated his fifth amendment right against self-incrimination by allowing the state to impeach him with his *Goodchild*[2] testimony. Where the historical facts of a case are undisputed, we review the constitutional significance of those facts de novo. *State v. Stevens,* 123 Wis. 2d 303, 313–14, 367 N.W.2d 788, 794, *cert. denied,* 474 U.S. 852 (1985).

Schultz had requested a *Goodchild* hearing on his motion to suppress statements he made to police because he claimed he had not knowingly waived his Miranda rights. During the hearing, Schultz claimed he had no recall of the events of November 19, 1985, the date of his wife's death. The trial court concluded that Schultz had knowingly and understandingly waived his right to remain silent, and denied his motion to suppress. At trial, the court prohibited the state from using the *Goodchild* testimony in its case-in-chief. After the state rested, Schultz testified that he remembered the events of November 19, 1985. On cross-examination, the state impeached Schultz with his *Goodchild* testimony.

In *Wold v. State,* 57 Wis. 2d 344, 356, 204 N.W.2d 482, 490 (1973), our supreme court held that "evidence excluded on direct should not be used for impeachment unless the accused takes the stand and testifies to matters directly contrary to what is in the excluded statement." The exception to this rule is if the excluded statement is untrustworthy, i.e., coerced or involuntary.

---

[2]*State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965), *cert. denied,* 384 U.S. 1017 (1966), established a hearing procedure to determine the voluntariness of a defendant's confession.

*Id.* at 355, 204 N.W.2d at 489–90. Schultz does not claim that his *Goodchild* testimony was coerced or involuntary. However, he claims that *Simmons v. United States,* 390 U.S. 377 (1968), bans any state use of his suppression hearing testimony. We disagree.

In *Simmons,* the police found two suitcases containing crime evidence after a warrantless search of a defendant's mother's house. 390 U.S. at 380. To establish standing for his suppression motion, a defendant asserted that one of the suitcases was similar to a suitcase he owned, and that he owned the clothing found inside it. *Id.* at 381. The trial court denied his suppression motion, and the court allowed the state to use his suppression motion testimony against him at trial. *Id.*

The United States Supreme Court reversed. It noted that the suitcase was strong evidence against the defendant, and that the government might have found it difficult to prove it was the defendant's without defendant's suppression motion testimony. *Simmons,* 390 U.S. at 391. The Court also noted that the dilemma the defendant faces "is most extreme in prosecutions for possessory crimes, for then the testimony required for standing itself proves an element of the offense." *Id.* The Court reasoned that "a defendant with a substantial claim for the exclusion of evidence may conclude that the admission of the evidence, together with the Government's proof linking it to him, is preferable to risking the admission of his own testimony connecting himself with the seized evidence." *Id.* at 393.

The Court concluded that a defendant should not be "obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination." *Simmons,* 390

U.S. at 394. The Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.*

In *Harris v. New York,* 401 U.S. 222 (1971), the state used some of the defendant's statements taken in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966), to impeach defendant's testimony. 401 U.S. at 223. The Court upheld this practice. "Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process." *Id.* at 225 (footnote omitted).

Here, the state did not use Schultz's *Goodchild* testimony for proof of guilt, but to impeach him with his prior statement that he did not remember what happened the day of his wife's death. Schultz waived his right against self-incrimination when he testified in his own defense at trial. The state's use of Schultz's prior testimony to impeach him was allowable under *Wold,* 57 Wis. 2d at 356, 204 N.W.2d at 490. We affirm as to this issue.

### Ineffective Assistance of Counsel

Schultz claims that he was denied effective assistance of counsel in violation of the sixth amendment to the U. S. Constitution. Whether counsel's actions constitute effective assistance of counsel is a mixed question of law and fact. *State v. Johnson,* 133 Wis. 2d 207, 216, 395 N.W.2d 176, 181 (1986). The trial court's

findings of fact regarding what happened will be upheld unless clearly erroneous. *Id.* Whether an attorney's behavior was deficient and whether it prejudiced the defendant, depriving him or her of effective assistance of counsel, are questions of law which we review de novo. *State v. Pitsch,* 124 Wis. 2d 628, 634, 369 N.W.2d 711, 715 (1985). We use the two-prong test of *Strickland v. Washington,* 466 U.S. 668, 687 (1984) to assess an ineffective assistance of counsel claim. Normally, we first determine whether counsel's performance was deficient, and, if we conclude it was, we then decide whether the deficient performance prejudiced the defendant. *Johnson,* 133 Wis. 2d 216–17, 395 N.W.2d at 181.

Schultz must first identify those acts or omissions he claims were not the result of reasonable professional judgment. *Johnson,* 133 Wis. 2d at 217, 395 N.W.2d at 181. The court must then judge whether, considering all of the circumstances, those acts or omissions were outside the range of professionally competent assistance. *Id.* The court, in making its judgment, should remember that counsel's function is to make the adversary testing process succeed in the particular case. *Id.* There is a strong presumption that counsel adequately assisted a defendant and that counsel always exercised reasonable professional judgment in deciding significant trial issues. *Id.* In addition,

> there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

378

*Strickland,* 466 U.S. at 697.

Schultz cites the following instances of what he claims demonstrates ineffective assistance of counsel:[3]

(1)  that trial counsel failed to properly investigate his case by failing to have the furnace motor tested;

(2)  that trial counsel failed to advise defendant properly about the ramifications of his not guilty plea and his not guilty by reason of mental disease or defect plea.

Schultz claims that his trial counsel failed to investigate his theory of the furnace motor.[4] He asserts

---

[3]Although Schultz claims other instances of ineffectiveness of counsel, we do not address them. A convicted defendant must identify to the trial court those "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. For the first time on appeal, Schultz argues that his counsel did not properly advise him regarding his decision to testify, that they improperly handled videotape evidence and that they had no theory of defense. These issues were not specifically identified by motion or affidavit below and they were not argued in Schultz's brief to the trial court. The videotape issue was not addressed during oral argument, and the other two issues were mentioned in a passing manner on rebuttal. We conclude that Schultz failed to raise and argue these issues below, and we do not address them further on appeal. *State v. Hahn,* 132 Wis. 2d 351, 361, 392 N.W.2d 464, 468 (Ct. App. 1986).

[4]Schultz's theory on the furnace motor needs explanation. At issue is why a certain fuse, which controlled the automatic garage door opener, the garage lights and the furnace fan motor, was found unscrewed at the time of the murder. At trial, the prosecution implied that Schultz had unscrewed the fuse, thereby removing power from the garage light and door opener, in order to prepare the garage to kill his wife. The prosecutor's theory was that Schultz started the car in his garage in order to fill the garage with carbon monoxide. He then brought his wife into the dark garage, the atmosphere of which could not be cleared because the garage door

that had his trial counsel done so, this would have bolstered his credibility as a witness in his own defense. He concludes that his trial counsel were ineffective by not investigating this issue, and that such ineffectiveness prejudiced his defense. We disagree.

■

> [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.

*Strickland,* 466 U.S. at 691. Schultz's trial counsel testified that they did not investigate the furnace fan theory because they concluded the issue had nothing to do with what they had identified as the two critical factors of the trial: (1) explaining how Schultz's wife got the two bruises on her head; and (2) explaining Schultz's daughter's testimony that "mommy and

---

opener had no power. He then struck her on the head with a blunt object to render her unconscious in order to keep her from escaping the garage, and so she would die from carbon monoxide poisoning. Schultz testified at trial that he had unscrewed the fuse in order to turn off a furnace fan motor, which would overheat. The prosecution took issue with this, arguing that if this were true, why had the defense not brought in an expert to so testify?

At the postconviction hearing, Schultz's trial counsel testified that Schultz never told them his theory of the furnace fan until April 2, 1986, five days before trial, and that he never asked them to investigate. They also testified, as did Schultz, that Schultz had previously told them that he had unscrewed the fuse for security reasons. This was because he had valuable tools and a car in the garage, and he was not there often. The trial court found Schultz's trial counsels' testimony "totally credible."

daddy fighted." We conclude counsels' decision not to investigate was reasonable, and thus not deficient performance.

Regarding the alleged failure to advise Schultz properly about his apparently inconsistent pleas, we need not decide whether counsel's actions amounted to deficient representation.[5] What Schultz is ultimately claiming is that his inconsistent pleas prejudiced the jury against him. However, as we have previously noted, the trial court found that during the extensive individual voir dire, any jurors indicating such prejudice were removed. Therefore, even if there were deficient representation on this matter, it did not prejudice the jury or the result, and reversal is not required. *Strickland,* 466 U.S. at 691.

### Wisconsin Constitutional Claim

Schultz also claims that he was denied his right to effective assistance of counsel in violation of Wis. Const. art. I, sec. 7. Although he implies that the state constitution provides criminal defendants more protection than the sixth amendment to the federal constitution, he acknowledges that no Wisconsin Supreme Court cases have decided this issue. He also notes that certain Wisconsin Court of Appeals decisions since *Strickland* have stated different tests to determine ineffectiveness of counsel. However, none of these cases held that an ineffectiveness analysis under Wis. Const. art. I, sec. 7, is stricter than a similar analysis under the sixth amendment to the U.S. Constitution.

---

[5]We do note that at the postconviction hearing, Schultz's trial counsel testified that they did advise Schultz completely on his pleas. The trial court found trial counsels' testimony totally credible.

Though Schultz argues that Wis. Const. art. I, sec. 7, provides a stricter standard that the sixth amendment to the U. S. Constitution, he has not fulfilled the requirements laid out in *Pitsch,* 124 Wis. 2d at 646, 369 N.W.2d at 721:

> Although both the state and the defendant cite art. I, sec. 7 of the Wisconsin Constitution, neither party develops an argument based on the state constitution. The parties provide no history of the provision, which might enable us to determine the extent to which it was or was not intended to parallel the federal constitution; they provide no discussion of case law interpreting art. I, sec. 7; they provide no discussion of the purpose or application of the provision in terms of guaranteeing the quality of the legal profession or guaranteeing the reliability of the outcome in a given case.

The *Pitsch* court rejected references to prior Wisconsin cases addressing ineffectiveness of counsel claims either because the court in those cases relied upon the federal constitution or because it was unclear which constitution the court relied upon. *Id.* at 647, 369 N.W.2d at 721. Since Schultz's argument fails to fulfill the *Pitsch* requirements, we do not consider his claim based on the Wisconsin Constitution.

### *Request for New Trial*

██ Schultz requests a new trial in the interest of justice pursuant to sec. 752.35, Stats., because it is probable that justice has miscarried due to the numerous errors by the court and his trial counsel. However, Schultz has at most shown harmless error which had no effect on the trial's result. It does not appear that a

retrial under optimum circumstances would produce a different result. *State v. Friedrich,* 135 Wis. 2d 1, 35, 398 N.W.2d 763, 778 (1987). We deny Schultz's request.

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. (*dissenting*). This appeal presents an important question of first impression: May the prosecutor use the defendant's suppression hearing testimony to impeach his or her testimony at trial? I conclude that the prosecutor may not. Because the use of the defendant's testimony was not harmless, I dissent.

Schultz relies on *Simmons v. United States,* 390 U.S. 377 (1968). Defendant Garrett testified in support of his unsuccessful pretrial motion to suppress certain evidence on fourth amendment grounds. The Government used his testimony in its case-in-chief. The Supreme Court reversed his conviction. The Court said:

> Those courts which have allowed the admission of testimony given to establish standing [in support of a suppression motion] have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause because the testimony was voluntary. As an abstract matter, this may well be true. A defendant is "compelled" to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forgo a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the "benefit" to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created. Thus, in this case Garrett

was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

390 U.S. at 393–94 (footnotes omitted).

*Simmons* was not an impeachment case. Garrett's testimony upon his unsuccessful motion to suppress evidence was used against him on the issue of guilt in the Government's case-in-chief. This fact has been considered significant by a number of courts. Also considered significant is the language used by the Court in *Brown v. United States,* 411 U.S. 223, 228 (1973), where the Court explained that, under the *Simmons* doctrine, the defendant is permitted to establish standing to contest an allegedly illegal search by testifying at a pretrial hearing, and "his testimony on that score is not *directly admissible* against him in the trial." (Emphasis added.) Another decision of the Court used by some courts to explain *Simmons* is *United States v. Kahan,* 415 U.S. 239 (1974), where the Court in a per curiam decision stated that, "The protective shield of *Simmons* is not to be converted into a license for false representations on the issue of indigency free from the risk that the claimant will be held accountable for his falsehood." *Id.* at 243. The Court suggested that the reader compare this statement to the Court's holding in *Harris v. New York,* 401 U.S. 222, 226 (1971).

The courts have been sharply divided as to how and in what contexts *Simmons* shall be applied. *See People v. Sturgis,* 317 N.E.2d 545, 547–48 (Ill. 1974), *cert. denied,* 420 U.S. 936 (1975) (statements in motion to suppress admissible to impeach); *United States v. Mullens,* 536 F.2d 997, 1000 (2d Cir. 1976) (under *Simmons,* defendant could have testified during suppression hearing without risk that anything he there said could later be used against him at trial); *People v. Douglas,* 136 Cal. Rptr. 358 (Cal. Ct. App. 1977) (defendant's testimony made during course of a hearing to suppress illegally seized evidence admissible for impeachment purposes); *United States v. Inmon,* 568 F.2d 326, 333 (3d Cir. 1977) (defendant could not be required, as the cost of litigating a valid fifth amendment double jeopardy claim, to waive the fifth amendment privilege against self-incrimination in a later trial); *United States v. Stricklin,* 591 F.2d 1112, 1118 (5th Cir.), *cert. denied,* 444 U.S. 963 (1979) (defendant may testify at a pretrial double jeopardy hearing and his testimony may not subsequently be used against him at the trial on the merits); *Gray v. State,* 403 A.2d 853, 858 (Md. Ct. Spec. App. 1979) (*Simmons* does not preclude the use of defendant's testimony at a suppression hearing to impeach the credibility of later testimony); *McGahee v. Massey,* 667 F.2d 1357, 1364 (11th Cir.), *cert. denied,* 459 U.S. 943 (1982) (under *Simmons,* testimony at a bond hearing is not admissible at the trial on the merits); *United States v. Quesada-Rosadal,* 685 F.2d 1281, 1283 (11th Cir. 1982) (use of prior inconsistent statements given at a suppression hearing can be used to impeach a defendant's trial testimony); *United States v. Gomez-Diaz,* 712 F.2d 949, 951 n. 1 (5th Cir. 1983), *cert. denied,* 464 U.S. 1051 (1984) (under *Simmons,* a defendant at a suppression hearing may

385

testify without fear that the testimony will be used against him at trial *except for impeachment*); *United States v. Garcia,* 721 F.2d 721, 723 (11th Cir. 1983) (defendant may testify at a pretrial double jeopardy hearing and disclose matters without fear that the evidence will be used against him at the ensuing trial); *Guenther v. Holmgreen,* 738 F.2d 879, 886 n. 7 (7th Cir. 1984), *cert. denied,* 469 U.S. 1212 (1985) (neither the United States Supreme Court nor the Wisconsin Supreme Court has decided how *Simmons* may apply to a pretrial hearing other than a suppression hearing—such as an arraignment or a preliminary hearing); *United States v. Hernandez Camacho,* 779 F.2d 227, 231 (5th Cir. 1985), *cert. denied,* 476 U.S. 1119 (1986) (*Simmons* rule does not apply to the sentencing phase of a criminal proceeding); *Porretto v. Stalder,* 834 F.2d 461, 466 (5th Cir. 1987) (bail testimony voluntarily given by the defendant is admissible against him at trial); *U.S. v. Ragins,* 840 F.2d 1184, 1193 (4th Cir. 1988) (defendant does not waive his privilege against self-incrimination by offering testimony at a pretrial double jeopardy hearing); *U.S. v. Thame,* 846 F.2d 200, 207 (3d Cir. 1988) (prosecutor's argument that defendant's reliance on his fourth amendment rights constituted evidence of guilt undermine *Simmons* rule).

In *United States v. Salvucci,* 448 U.S. 83, 93–94 (1980), the Court said: "This Court has not decided whether *Simmons* precludes the use of a defendant's testimony at a suppression hearing to impeach his testimony at trial." In n. 8, however, the Court said that "[a] number of courts considering the question have held that such testimony is admissible as evidence of impeachment." (Citations omitted.) In n. 9 the Court said that "[t]his Court has held that 'the protective shield of *Simmons* is not to be converted into a license

for false representations. ...' *United States v. Kahan* ...."

Justice Marshall, with Justice Brennan joining, dissented noting that, "Respondents contend that the testimony given at the suppression hearing might be held admissible for impeachment purposes and, while acknowledging that that question is not before us in this case, the majority broadly hints that this is so." (Citations omitted.) *Salvucci,* 448 U.S. at 96.

Two points need to be noted. First, none of the cases have involved the defendant's testimony in support of his or her motion to suppress on *Goodchild* grounds a confession or inculpatory statement. Second, those courts which have permitted the prosecutor to use the defendant's testimony at a suppression hearing for impeachment purposes have relied on decisions of the United States Supreme Court which permit the use of testimony or evidence where exclusion is not necessary to meet the objectives of an exclusionary rule. *Harris v. New York* and *Oregon v. Hass,* 420 U.S. 714 (1975) involved inadmissible evidence which had been obtained in violation of the defendant's Miranda warning rights. *Walder v. United States,* 347 U.S. 62 (1954), involved inadmissible evidence obtained solely in violation of the defendant's fourth amendment rights. In describing the results of these cases, the United States Supreme Court has said:

> In those cases, the ends of the exclusionary rules were thought adequately implemented by denying the government the use of the challenged evidence to make out its case in chief. The incremental furthering of those ends by forbidding impeachment of the defendant who testifies was deemed insufficient to permit or require that false testimony go unchal-

lenged, with the resulting impairment of the integrity of the factfinding goals of the criminal trial.

*United States v. Havens,* 446 U.S. 620, 627, *reh'g denied,* 448 U.S. 911 (1980).

"In the case of the fifth amendment, however, it is the constitutional right itself, not simply policy concerns, that requires exclusion of compelled testimony." *State v. Thompson,* 142 Wis. 2d 821, 833 n. 8, 419 N.W.2d 564, 568 (Ct. App. 1987). (Citing Note, *The Impeachment Exception to the Sixth Amendment Exclusionary Rule,* 87 Colum. L. Rev. 176, 182 (1987)).

We recently held that a probation interview which dealt with the crime with which the defendant was charged could not be used to impeach the defendant's trial testimony. *Thompson,* 142 Wis. 2d at 826–34, 419 N.W.2d at 565–68. We relied on *Mincey v. Arizona,* 437 U.S. 385 (1978), and *New Jersey v. Portash,* 440 U.S. 450 (1979).

In *New Jersey v. Portash,* the defendant testified before a grand jury after the prosecutors agreed not to use his statements or evidence derived from them in subsequent criminal proceedings. He was thereafter indicted. He did not testify in his defense after the trial court ruled the prosecution could use his immunized grand jury testimony for purposes of impeachment. He was found guilty. On appeal, he contended that the proposed use of his immunized grand jury testimony violated his fifth and fourteenth amendment rights. The Supreme Court agreed, saying:

> The Fifth and the Fourteenth Amendments provide that no person "shall be *compelled* in any criminal case to be a witness against himself." As we reaffirmed last Term, a defendant's compelled statements, as opposed to statements taken in

violation of Miranda, may not be put to any testimonial use whatever against him in a criminal trial. "But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law." (Emphasis in original) *Mincy v. Arizona,* 437 U.S. 385, 398 ....

440 U.S. at 459 (footnote omitted).

In *Simmons,* the Court in substance held that Simmons was "compelled" to testify in support of his motion to suppress. While the Court stated that testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit, the Court said it is intolerable that a criminal defendant must give up one constitutional right—not to incriminate himself—in order to assert another—to suppress evidence obtained in violation of a constitutional right.

The United States Supreme Court has already signaled that it will allow testimony given at a suppression hearing to be used for impeachment purposes where the ends of the exclusionary rules are adequately implemented by denying the prosecution the use of the challenged evidence to make out its case-in-chief. Thus, testimony at a pretrial suppression hearing based on a violation of the defendant's Miranda warning rights or in violation of his fourth amendment rights, and perhaps his sixth amendment right to counsel, may be used to impeach the defendant if he testifies. I see no similar signal where the defendant seeks to suppress evidence obtained in violation of his or her fifth amendment right.

In this case, Schultz attempted to suppress, as involuntary, his statements at the hospital after his arrest. He seeks the protection of the fifth amendment, not an exclusionary rule.

The Wisconsin Supreme Court in adopting the rule for determining the voluntariness of confessions, prescribed the "orthodox" procedure described in *Jackson v. Denno*, 378 U.S. 368 (1964), *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 264, 133 N.W.2d 753, 763 (1965), *cert. denied*, 384 U.S. 1017 (1966). Under this procedure, known as a *Goodchild* hearing, the trial judge makes a determination of voluntariness. As to this procedure the court said:

> At this hearing the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained. By so doing, the defendant does not waive his right to decline to take the stand in his own defense on the trial in chief. Neither does he waive any of the other rights stemming from his choice not to testify.

*Id.* at 265, 133 N.W.2d at 764 (footnote omitted).

The purpose of a *Goodchild* hearing is indeed "limited." The defendant is not expected to defend himself or herself on the merits. The sole purpose of a *Goodchild* hearing is to make a record of the voluntariness of the alleged confession or inculpatory statement. It would be a perversion of the *Goodchild* procedure to allow the prosecution to use the defendant's *Goodchild* testimony for impeachment purposes at trial. More important, such use of the defendant's *Goodchild* testimony would violate his or her fifth amendment rights.

The state argues that, in any event, if the prosecutor's use of the defendant's hearing testimony was error, such error was harmless beyond a reasonable doubt. The states argues that "it is doubtful" that the questions and the defendant's answers at the *Goodchild*

hearing had any impact on the jury. The state argues that Schultz's *Goodchild* hearing testimony simply established that there was a period in which he could not remember an account he had given to the police as to the circumstances of his wife's death. The possible use by the state of the defendant's hearing testimony for impeachment purposes was anticipated by the defense and extensive briefs were filed by the state and the defendant. The issue of the use of the defendant's hearing testimony was argued at length to the trial court before the court made its ruling. Neither the prosecutor not defendant's counsel regarded this evidence, if admitted, as having little potential impact on the jury. Schultz's credibility was a major issue in the trial. In the circumstances, I conclude that the use of Schultz's *Goodchild* hearing testimony was not harmless error. *Cf. State v. Childs,* 146 Wis. 2d 116, 123–29, 430 N.W.2d 353, 356–58 (Ct. App. 1988) (harmless error doctrine applied to admission of involuntary confessions or inculpatory statements).