IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 23, 2019 Session

## CARLOS D'JUAN CAMPBELL, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
No. 110071     Steven Wayne Sword, Judge

————————————————————

### No. E2018-01877-CCA-R3-PC

————————————————————

The Petitioner, Carlos D'Juan Campbell, Jr., appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his two convictions for attempted first degree murder and one conviction for employing a firearm during the commission of a dangerous felony, arguing (1) he received ineffective assistance of counsel and (2) the post-conviction court erred in allowing the State to present proof and argument at the post-conviction hearing after the State failed to file a written response to his petition. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Gregory P. Isaacs and J. Franklin Ammons, Knoxville, Tennessee, for the Petitioner, Carlos D'Juan Campbell Jr.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip H. Morton and TaKisha M. Fitzgerald, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

A Knox County grand jury indicted the Petitioner on seven counts of attempted first degree murder, two counts of employing a firearm during the commission of a dangerous felony, and two counts of felony reckless endangerment. State v. Carlos Campbell, No. E2014-00697-CCA-R3-CD, 2015 WL 6155893, at *1 (Tenn. Crim. App. Oct. 20, 2015), perm. app. denied (Tenn. Apr. 6, 2016) (designated a "Not for Citation" case). Before trial, the Petitioner filed a motion to suppress all the statements he made to

police during his October 2012 interview because they were the result of police coercion. Id. at *5. The trial court denied this motion, holding that although the officers' remarks were coercive in nature, the Petitioner's will was not overborne. Id. at *12. Immediately prior to the start of trial, the State dismissed the two counts of felony reckless endangerment. Id. at *1.

**Trial.** The evidence presented at trial established that two shootings occurred at a residence on Wilder Place in Knoxville. Id. at *1-4. The first shooting took place around 3:00 a.m. on August 13, 2012. Id. at *1. When the police arrived, they noticed multiple bullet holes in both a silver Lincoln belonging to Devante Nail and a black Nissan Maxima, which were parked outside the Wilder Place residence. Id. In addition, ten Smith and Wesson .40 caliber shell casings were collected from a nearby intersection. Id. at *2. Officers also noted that the residence on Wilder Place was struck two times by gunfire, although these bullets did not make it all the way through to the inside of the residence. Id. The evidence showed that Brittaney Nail, Lakeshia Reynolds, Tamichael Bennett, Davante Nail, and Darlessa Clemons, who was Devante Nail's girlfriend, were present in the residence at the time of this shooting. Id.

The second shooting occurred at the same Wilder Place residence around 2:30 a.m. on August 15, 2012. Id. Brittaney Nail testified that she was watching movies with Darlessa Clemons inside the residence on that date when numerous bullets pierced the drywall of her home. Id. Ms. Nail[1] said that she called 9-1-1 and informed the operator that the Petitioner was responsible for this shooting because Clemons had told her she heard the Petitioner's name "a lot in conversation." Id. Ms. Nail added that she knew that the Petitioner and her brother, Devante Nail, "had something between each other." Officer Hopkins testified that the inside of the Wilder Place residence "was riddled with gunshots" and that "there were pieces of drywall just scattered all over the place." Id. at *3. He also noted that Darlessa Clemons had "a through and through hole in her shirt" and a "scratch mark" on her back where he opined that a bullet had nearly struck her. Id. Investigator Chas Terry also testified that there were "bullet holes throughout the entire house." Id. Numerous photographs were admitted showing the damage these bullets caused to the residence, the hole in Clemons' shirt, and Clemons' injury.

The Petitioner was questioned by police about these shootings in August 2012 and in October 2012. Id. The State presented an approximately fifty-minute excerpt of the Petitioner's October 2012 interview with police. Id. During this excerpt, the Petitioner stated that he participated in the robbery of Devante Nail's younger brother, that Devante Nail retaliated for his brother's robbery by coming to the Petitioner's neighborhood and

---

[1] Although we generally refer to witnesses by their last name for the purposes of efficiency, we will refer to Brittaney Nail as Ms. Nail to distinguish her from her brother, Davante Nail.

shooting at a house twice, and that this feud between the Petitioner and Davante Nail resulted in an ongoing Twitter exchange. Id. The Petitioner also disclosed during his excerpted statement that he only drove the car during the Wilder Place shootings and never fired a gun, that Cuben Lagrone and Laquinton Brown fired the shots during the first shooting, and that Lagrone, Brown, and a juvenile were in his car during the second shooting. Id. at *4. Investigator Brandon Wardlaw testified that the Petitioner, at a pretrial hearing in this case, admitted he was one of the shooters. Id.

Patricia Resig, an expert in firearm identification, testified that the ten Smith and Wesson .40 caliber casings recovered from the August 13, 2012 shooting came from the same unknown gun. Id. After examining the bullets and casings recovered from the scene of the second shooting, Resig opined that three guns had been used in the August 15, 2012 shooting. Id.

At the conclusion of trial, the Petitioner was convicted of two counts of attempted first degree murder, one count of employing a firearm during the commission of a dangerous felony, and five counts of misdemeanor reckless endangerment, and the trial court imposed an effective sentence of forty-six years. Id. at *5.

The Petitioner appealed,[2] and this court affirmed his convictions for attempted first degree murder and employment of a firearm during the commission of a dangerous felony but reversed and dismissed his convictions for misdemeanor reckless endangerment on the basis that misdemeanor reckless endangerment is not a lesser included offense of attempted first degree murder. Id. at *23-24. The Tennessee Supreme Court denied the Petitioner's application for permission to appeal. Id. at *1.

On March 3, 2017, the Petitioner filed a timely petition for post-conviction relief, alleging, in part, that trial counsel was ineffective in failing to advise him of the State's plea offer, in eliciting detrimental testimony from him at the suppression hearing, in failing to object to Investigator Wardlaw's testimony at trial concerning the Petitioner's admission at the suppression hearing that he fired shots at the scene, in failing to make a written request for the missing witness instruction, in failing to argue or present any mitigating evidence at his sentencing hearing, and in failing to include a Rule 404(b) issue in the motion for new trial. He also argued that the cumulative effect of trial counsel's errors constituted ineffective assistance of counsel. Thereafter, the Petitioner filed an amended petition, wherein he additionally alleged that trial counsel was ineffective both in failing to make a written request to sever the counts of the indictment

---

[2] Trial counsel passed away in a single vehicle accident before filing the Petitioner's appellate brief on direct appeal. Thereafter, appellate counsel was appointed as counsel of record for the Petitioner. See Carlos Campbell, 2015 WL 6155893, at *1 n.1.

- 3 -

and in failing to make a written request for an instruction on solicitation of first degree murder.

**Post-Conviction Hearings.**  The post-conviction court conducted evidentiary hearings on August 30, 2018, and September 6, 2018.  At the August 30, 2018 hearing, the Petitioner testified that he met with trial counsel three or four times between his indictment and trial.  During these meetings, trial counsel talked to the Petitioner about getting his statement to police suppressed because he had implicated himself.

The Petitioner said that trial counsel informed him of the plea offers from the State over two meetings.  He said the State's first offer was fifteen years at thirty percent but was contingent on his codefendant Laquinton Brown also entering a guilty plea.  The State's second offer was twenty years at thirty percent, with no future indictments on his other cases, and was contingent on the Petitioner testifying against his codefendants.  The Petitioner stated that in hindsight, he would have taken the second plea deal and would have willingly testified against his codefendants if he had known about the sentence he was facing if convicted at trial.

The Petitioner said trial counsel never showed him his indictment, never discussed the elements of the charged offenses, never talked to him or presented him with a document in writing about the potential sentence he was facing on each of the counts of the indictment, never explained the difference between concurrent and consecutive sentencing, and never discussed how the State could use his juvenile convictions to enhance his sentence.  He also said trial counsel never talked to him about the sentence he would receive if convicted of the charge of employment of a firearm during the commission of a dangerous felony.  He said trial counsel advised him to accept the State's offer because it consolidated and resolved all of his cases.  The Petitioner stated that although trial counsel was very concerned about the State threatening additional charges in his unrelated case, trial counsel never explained what would happen if he were convicted at trial.  When trial counsel communicated the State's offer to him, the Petitioner understood that "the most time [he] would get would be 25 years[,]" which was the maximum for a Class A felony.  He said that trial counsel never told him he would be required to serve eighty-five percent of his sentence and never explained the sentencing ranges for his charged offenses.  He also said trial counsel never informed him of the number of years he was facing at trial versus the number of years in the State's offer, never advised him about whether the court would sentence him concurrently or consecutively, and never talked to him about what impact his criminal history could have on his sentence.  The Petitioner said that it was only after he was convicted at trial and just before his sentencing hearing that trial counsel told him his sentences could be ordered to be served consecutively, or "stacked," and that he was facing significantly more time than twenty-five years.  He said he was angry when trial counsel first informed

- 4 -

him of his sentencing exposure because he would have accepted the State's plea deal had he known he was facing more than twenty-five years. The Petitioner described the conversation he had with trial counsel shortly before his sentencing hearing:

> [Trial counsel] was like—all he said was, "They're trying to . . . run your sentences consecutive," and I was like, "What does that mean?" He was like, "Basically stacked." I was like, "I thought it could only be 25 [years] for a class A felony." He was like, "No[,]" [and then] he explain[ed] consecutive [sentencing] to me after the fact. I was like, "Well, is there any way that I could get my deal back?" He was like, "No. It's too late." And I was like, "Well, that's messed up 'cause I didn't know that."

The Petitioner said that at the time of his sentencing hearing, he was not aware that trial counsel never filed a sentencing memorandum in response to the State's sentencing memorandum so he could request mitigating factors and concurrent sentencing. The Petitioner stated that he had no doubt in his mind that he would have accepted the State's plea offer if trial counsel had explained his sentencing exposure.

The Petitioner acknowledged that he had entered guilty pleas to two prior misdemeanor drug convictions but claimed that he did not recall receiving consecutive sentences for those convictions. He said trial counsel met with him to discuss the suppression of his second statement to police.

The Petitioner remembered Gary Lamb, trial counsel's investigator, being present at several of the meetings he had with trial counsel, including at least one meeting where they discussed the State's plea offer. He also recalled meeting with Lamb without trial counsel a few times. The Petitioner said Lamb showed him a video recording of his first or second statement to police and that Lamb also showed him the statements made by his codefendants in the unrelated shooting case. The Petitioner said that after his trial, he met with Lamb more than trial counsel. Upon being convicted in this case, the Petitioner informed trial counsel and Lamb that he wanted to receive a sentence of fifteen years at thirty percent, but the State refused to agree to this sentence unless his codefendant Laquinton Brown entered a guilty plea as well. The Petitioner said that trial counsel and Lamb never discussed the consecutive sentences he had received for his earlier drug convictions in general sessions court and never explained that the trial court could impose consecutive sentencing for his convictions in this case.

Gary Lamb testified for the State. He stated that he worked with trial counsel on the Petitioner's case but was unable to attend the Petitioner's trial. Lamb said that he met with the Petitioner several times and asserted that there were "several occasions" when he and trial counsel met with the Petitioner. He noted that "before we even started working

the case, there was an offer that we discussed with [the Petitioner]." When asked about the discussions with the Petitioner regarding this offer, Lamb stated:

> We had watched [the Petitioner's] interview several times, and I remember saying that if we took each one of these cases to trial that he would get a lot more time than what he was looking at [pursuant to the State's offer]. The offer was 20 years, but [the State] wanted him to testify against the people that he spoke about, and . . . [the Petitioner] didn't think that was in his best interest.

Lamb said he explained to the Petitioner that consecutive sentencing could result in more time if he were convicted at trial, stating: "[W]e had a[n] . . . almost seven-hour interview where [the Petitioner] admitted some part in several different cases, and we had discussed how he could get time for each one [of these cases] and it would stack up and would be a lot more time if he was convicted of each charge." He said the Petitioner ultimately decided not to accept the State's offer.

Lamb admitted that he was not a licensed attorney or paralegal and was not authorized to give legal opinions, including advice regarding a client's sentencing exposure. He said that while the jail records showed that trial counsel visited with the Petitioner four times at jail, he could not say how many of these meetings he attended. Although Lamb could not identify the "specific day" when trial counsel advised the Petitioner concerning his sentencing exposure, he insisted that he was present when this topic was discussed. Although Lamb acknowledged that he did not advise the Petitioner regarding the applicable sentencing law or the sentencing ranges for each of the charged offenses, he said trial counsel informed the Petitioner of "the ranges. . . for these charges in all of these cases that he had." He admitted he did not recall the "specifics" of any meetings with the Petitioner and did not remember anyone explaining to the Petitioner "the impact of a sentence if he were convicted versus the plea agreement."

Lamb asserted that he was with trial counsel at least one time when they discussed the Petitioner's sentencing exposure and that he talked to the Petitioner about his sentencing exposure on "several occasions." He said that while he originally had a case file for the Petitioner containing his records and notes, he was unable to locate this file in time for the post-conviction hearing and, therefore, was unable to present records corroborating anything he said he did or discussed with the Petitioner during the case.

Following these hearings, the post-conviction court entered a written order denying post-conviction relief on October 2, 2018. Regarding trial counsel's advice on the plea offer, the court concluded:

[T]he court does not find the Petitioner credible when he states that he was unaware that he could receive consecutive sentences. . . . Despite the fact that [deceased trial counsel] is no longer with us to explain his actions, the court finds that the Petitioner has failed to establish by clear and convincing evidence that [trial counsel] was deficient in his advice to the Petitioner concerning the plea offer and potential consequences of going to trial. [Trial counsel] went so far as to place on the record before the trial began that he was advising the Petitioner to take the very favorable offer in exchange for testifying. The court addressed this with the Petitioner and he clearly indicated a desire to proceed to trial. The offer would conclude all the Petitioner's cases. . . . The emphasis on the plea deal resolving all potential cases against the Petitioner certainly points to some consideration of potentially consecutive sentences. The Petitioner was certainly aware of the possibility of consecutive sentences based upon his recent experience in General Sessions Court.

. . . .

Although the court finds the Petitioner has failed to establish the [deficiency] prong of the Strickland standard, the court will still evaluate the prejudice prong. . . .

The court finds that the Petitioner has failed to establish [that he would have accepted the plea]. Even after being convicted and sentenced in this case to consecutive sentences, the Petitioner proceeded to trial on his other attempted murder case where he once again received consecutive sentences. His attorney [in that case] strongly advised him to take the offer of 20 years. He rejected this offer and elected to go to trial. The court believes it is only hindsight that leads the Petitioner to state that he would have accepted the offer.

Regarding whether trial counsel elicited unfavorable testimony from the Petitioner at the suppression hearing, the post-conviction court held:

The Petitioner argues that trial counsel was in[ ]effective by eliciting testimony from [him] during a suppression hearing that [he] fired a weapon during one of the offenses in question. He . . . argues that counsel's direct examination resulted in a new admission of criminal conduct that was used against [him] during trial. The basis of his claim is that in his statements to the police[,] he only admitted to driving the car. He denied firing a

weapon. It was only during the suppression hearing that he admitted to firing a gun.

This is an inaccurate statement. [The Petitioner] did tell the police on October 12, 2012 that he fired a gun. . . . He only admitted this after the investigators had told him he would be raped in prison. Trial counsel was attempting to demonstrate to the court that the admission of shooting a gun was the product of coercion. The Petitioner was simply explaining at the suppression hearing why he had said he was a shooter and not just a driver. He was not giving any new information.

It is true that the State did not introduce at trial the portion of the Petitioner's interview where he admitted that he fired a gun. Also, Investigator Wardlaw testified during the trial that the Petitioner denied being a shooter until the suppression hearing. However, this testimony was incorrect, as explained above. Thus, counsel did not elicit any new incriminating information from the Petitioner during the suppression hearing. Counsel cannot be faulted for the Petitioner's testimony. It was consistent with what he had already told the police. The fact[] that the State did not introduce during trial the initial admission and a witness testified incorrectly about what was said on October 12, 2012[,] cannot be held against trial counsel in a pre-trial hearing. The Petitioner has failed to establish deficient performance on this issue.

As to trial counsel's failure to object to Investigator Wardlaw's testimony concerning the Petitioner's admission at the suppression hearing to firing a gun at the scene, the court concluded:

The court now has no way of knowing why counsel did not object. It could be that he didn't object because his client had previously admitted to the investigators that he fired a weapon[,] and he expected that testimony to come in during another part of the trial. Such proof is not before the court. The testimony in question would have been disallowed had an objection been made by counsel. Without any discernable strategic reason for not objecting, the court finds that the failure of counsel to object to this testimony was deficient performance. The court will now examine the prejudice prong.

Although the Court of Criminal Appeals focused on the in-court testimony of the Petitioner as the corroboration of his statement to the

investigators, there was additional corroborating evidence outside the testimony of Investigator Wardlaw about the suppression hearing testimony of the Petitioner. Brittaney Nail testified that she was in the home during the shooting in question. She called 911. The recording of that call was played during the trial. Ms. Nail stated that the Petitioner was one of the people who committed the act. She testified that she knew that Devante Nail and the Petitioner "had something between each other" . . . . She further testified that Darlessa Clemons, who was also in the house during the shooting, knew it was the Petitioner and told her the name. Proof was introduced during the trial about multiple shootings based upon an ongoing conflict between Mr. Nail and the Petitioner, establishing motive for the Petitioner to commit the crime. Finally, a large amount of physical evidence was introduced proving that multiple shots were indeed fired into the home on the nights in question.

. . . .

There was a tangible injury in this case. There were multiple bullet holes in the property and the clothing of one of the victims, Ms. Clemons, with an apparent slight physical injury from a bullet on her body. The court finds that the physical evidence provides substantial independent evidence showing that the injury actually occurred. The court also finds that the Petitioner's statement was trustworthy based upon the court's reasoning outlined in the order denying the motion to suppress. Furthermore, the circumstantial evidence of the on-going battle and animosity between the Petitioner and Mr. Nail combined with the physical evidence and the consistent admissions in both statements of the Petitioner support the finding that his statement was trustworthy. Although not necessary, the court finds that the testimony of Ms. Nail, the proof of motive, and the 911 call link the Petitioner to the crime.

Finally, the court instructed the jury on criminal responsibility for the conduct of another. Even if there was no proof that the Petitioner fired a weapon, he had clearly admitted many times that he participated as a driver. This proof would be sufficient to support the convictions even if the Petitioner did not fire the gun.

In sum, the court finds that the State has sufficiently corroborated the Petitioner's statement to police completely independent of his suppression hearing testimony. Had trial counsel objected to the admission of the Petitioner's testimony from the hearing, the proof would still be

sufficient to support the convictions. Therefore, he has failed to establish that he was prejudiced by counsel's deficiency in this area.

Next, regarding trial counsel's failure to request a severance, the post-conviction court held:

> The charges in the indictment encompass two separate shootings that occurred two days apart. Petitioner claims that counsel should have filed a motion requesting that the two incidents be severed for trial. Once again, without the testimony of trial counsel, the court cannot discern from the record alone if the decision was a strategic choice. Although there was significant pre-trial litigation to exclude [Rule] 404(b) type evidence, a motion to sever was not filed. . . .
>
> . . . .
>
> . . . The evidence presented during the trial shows that the two incidents were part of an ongoing battle between the Petitioner and his friends and Mr. Nail and his friends. There were so many shootings that the incidents could be classified as being part of an ongoing war. The distinguishable goal of each shooting charged in the indictment was a response to threatening actions of Mr. Nail. Thus, the court finds that they were part of a larger, continuing plan or conspiracy.
>
> The issue of what would be appropriate to explore by both parties was litigated pre-trial and during the trial. The court ruled pursuant to Rule 404(b) that the evidence in both shootings would be admissible in this trial. Evidence from other incidents was excluded. The proof in each of these two incidents would be admissible in each case had there been separate trials. Finally, the court found, and still holds, that the danger of unfair prejudice did not outweigh the probative value regarding the material issues of motive or intent in each incident. A motion to sever would have been denied. Since the court finds that a motion to sever would have been denied had it been filed, the Petitioner has failed to establish the deficiency and prejudice prongs on this issue.

As to trial counsel's failure to request the missing witness instruction, the post-conviction court concluded:

> [T]he Petitioner claims that trial counsel was ineffective in not requesting a jury instruction on missing material witnesses. He bases his argument on

- 10 -

the fact that the State did not call to the stand multiple individuals who were in the home during the shootings and were named victims. Counsel argued numerous times during closing argument that their absence should cause the jury to question the State's case. But, he did not request [Tennessee Pattern Jury Instruction] 42.16.

The court finds that the extensive record in this case shows that the missing witnesses were never cooperative with the State. In order to justify an instruction on a material witness, the missing witness must not have been equally available to both sides, the witness was not truly unavailable, and the testimony was not as likely to be favorable to one party as the other. See State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984).

In this case, there is no evidence that the missing witnesses were peculiarly available to the State over the Petitioner. The background of the shootings shows that Mr. Nail had also engaged in criminal behavior leading up to these shootings. The witnesses were certainly not cooperative with the investigators. Thus, it was just as likely that the witnesses would have shown up to testify had they been subpoenaed by the Petitioner as by the State. The court finds that the record did not support including [Tennessee Pattern Jury Instruction] 42.16 in the instructions. Therefore, the Petitioner has failed to show that counsel was deficient in his performance on this issue.

Regarding trial counsel's failure to request an instruction on solicitation of first degree murder as a lesser included offense to attempted first degree murder, the court held:

The Petitioner argues that counsel was ineffective in failing to request that solicitation of first degree murder be instructed as a lesser included offense. Solicitation of first degree murder is a lesser included offense of attempted first degree murder. See[,] e.g.[,] [Orlando] Crenshaw v. State, [No. M2004-00045-CCA-R3-CD,] 2004 WL 2984856 (Tenn. Crim. App. 2004). However, there was no evidence presented that the Petitioner in any way commanded, requested, or attempted to command or request that someone else commit a criminal offense. With no supporting evidence, it would have been improper for the court to instruct on solicitation. Therefore, the Petitioner has failed to establish that counsel was deficient in this area.

- 11 -

As to trial counsel's failure to present mitigation argument and proof during sentencing, the post-conviction court concluded:

Although counsel did not file a sentencing memorandum or present additional evidence during the sentencing phase, he did argue mitigation in the form of lack of intent to injure, not shooting during the first incident, and his young age. The Petitioner also gave an allocution prior to the entry of judgment. The court found that the enhancing factors significantly outweighed any mitigation and that consecutive sentences were warranted.

The Petitioner did not present any evidence during the post-conviction hearing as to what proof trial counsel should have introduced during the sentencing hearing or what mitigation argument should have been made on his behalf. Therefore, he has failed to establish that trial counsel was deficient on this issue.

Regarding trial counsel's failure to raise the Rule 404(b) issue in the motion for new trial, the post-conviction court held:

The Petitioner argues that trial counsel was deficient in failing to raise in his motion for new trial that the State played portions of the Petitioner's statement to the police that should have been excluded under Rule 404(b). Trial counsel objected during trial and requested a mistrial. The trial court overruled the objection and denied the motion for mistrial. [Appellate] counsel[, who was appointed after trial counsel's death,] raised this issue on appeal; however, since [trial counsel] did not raise it in the motion for a new trial, the appellate court only reviewed the issue under the plain error standard.

. . . Since appellate counsel raised the issue on appeal, the court can see no reasonable explanation not to raise the issue in the motion for a new trial. The court finds [trial] counsel was deficient on this issue and will next examine the prejudice prong.

The Court of Criminal Appeals in reviewing this issue stated,

"We agree with the trial court's conclusion that the robbery of Mr. Nail's brother was one of several precipitating events in this feud that led to the shootings and was admissible to establish the Defendant's motive and intent." State v.

- 12 -

[Carlos] Campbell, No. 2014-00697-CCA-R3-CD, 2015 WL
6155893[,] at *16 (Tenn. Crim. App. 2015).

Although the appellate court was only examining the issue under the plain
error standard, this statement reflects that the trial court was correct in the
crux of its ruling on the issue. The Petitioner has failed to make any
additional argument that would lead the court to find a reasonable
probability that the appellate result would have been different under a lower
standard of review. The court finds that the Petitioner has failed to
establish that he was prejudiced by appellate counsel's deficiency.

As to whether the cumulative effect of all of trial counsel's errors amounted to
ineffective assistance of counsel, the post-conviction court concluded:

Although the court has found some deficient performance by
trial/appellate counsel, the court finds they do no[t] warrant the granting of
a new trial. The record indicates that trial counsel properly investigated the
case and prepared for trial. He was an experienced and successful trial
attorney. He vigorously litigated the Petitioner's defense and was able to
achieve the reduction of five counts of attempted first degree murder to
misdemeanor convictions for reckless endangerment. The court finds that
the Petitioner received competent counsel who was able to present his
defense effectively.

Following entry of the order denying post-conviction relief, the Petitioner filed a
timely notice of appeal.

## ANALYSIS

**I. Ineffective Assistance of Counsel.** The Petitioner contends that trial counsel
was ineffective in failing to adequately advise him regarding plea offers, in eliciting
detrimental testimony at his suppression hearing, in failing to object to Investigator
Wardlaw's testimony concerning the Petitioner's admission at the suppression hearing to
firing a gun, in failing to make a written request to sever the charges in this case, in
failing to make a written request for a missing witness instruction, in failing to make a
written request for an instruction on solicitation of first degree murder, in failing to
present argument or evidence in support of mitigation at his sentencing hearing, and in
failing to include a Rule 404(b) objection in his motion for new trial. He also contends
that the cumulative effect of all of trial counsel's errors deprived him of the effective
assistance of counsel. The State counters that trial counsel's performance was not

- 13 -

deficient because it was within the professional norms expected of defense counsel and that it did not prejudice the Petitioner. We conclude that trial counsel was not ineffective.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

- 14 -

**State's Plea Offers.**  The Petitioner contends that trial counsel was ineffective in failing to adequately advise him of plea offers made by the State.  Although he acknowledges that trial counsel advised him to accept the State's plea offer, he insists that he was unable to make an informed decision about the offer because trial counsel failed to warn him that he could receive a sentence in excess of twenty-five years if the trial court imposed consecutive sentencing.  Consequently, the Petitioner asks that this court remand his case and order the State to reinstate its original plea offer and then negotiate in good faith.  See State v. Harris, 875 S.W.2d 662, 667 (Tenn. 1994).

The trial transcript shows that immediately prior to the start of trial, trial counsel placed on the record that the State had made "a favorable offer" early in the case that included not only this case but also the other cases the Petitioner faced.  Trial counsel said it was his recommendation to accept that offer, but the Petitioner decided to reject that offer and proceed to trial.  Trial counsel said the Petitioner had "a good reason why . . . he would not accept the offer[,]" but he wanted to place this information on the record because he believed it would be "helpful down the road[.]"  At that point, the following conversation occurred between the trial court, trial counsel, the State, and the Petitioner:

| | |
|---|---|
| The Court: | . . . Would you please state the offer on the record, please? |
| [Trial counsel]: | The offer was, and I'm not positive whether it was 18 or 20, but it was a 30 percent offer and would count all of his cases and [he would] not to be prosecuted on other potential drive-by's that he could be charged with. |
| The Court: | All right.  General, is that your understanding of the agreement? |
| [The State]: | That was, but it also included him testifying truthfully. |
| The Court: | Okay. |
| [Trial counsel]: | And it did include testifying truthfully against any and all co-defendants.  I think that's where the bump was, but I need that on the record. |
| The Court: | Yes, sir.  All right.  [Petitioner,] your attorney has announced that there was an offer in this case.  Now, |

the decision on accepting that offer is yours and yours completely. [Trial counsel] can give you advice on it, but ultimately, it's your decision on whether or not to accept that offer. Do you understand that?

[Petitioner]: Yes, sir.

The Court: And so, since we're here for trial today, I assume you did reject that offer. Is that accurate?

[Petitioner]: Yes, sir.

The Court: All right. And so, that's what you want to do. Nobody is forcing you to go to trial, this is your free choice; is that correct?

[Petitioner]: Yes, it is.

At the post-conviction hearing, the Petitioner asserted that trial counsel never discussed the risk of receiving consecutive sentencing. However, Investigator Lamb testified that he was present when trial counsel talked to the Petitioner about the State's offer and his sentencing exposure.

"The Strickland standard for determining whether a defendant received effective assistance of counsel applies during plea negotiations as well as during trial." Nesbit v. State, 452 S.W.3d 779, 787 (Tenn. 2014) (citing Missouri v. Frye, 566 U.S. 134, 144-47 (2012); Hill v. Lockhart, 474 U.S. 52, 58-59 (1985)). Trial counsel must "promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney." Frye, 566 U.S. at 145 (citing ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2(a) (3d ed. 1999)). "'[A] lawyer must abide by his client's decision [to accept or reject a plea] only after having provided the client with competent and fully informed advice, including an analysis of the risks that the client would face in proceeding to trial.'" Nesbit, 452 S.W.3d at 800 (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013) (Sotomayor, J., concurring)). A defendant asserting that trial counsel's performance was deficient during the plea negotiations process must "show by a reasonable probability that, but for counsel's deficient representation, (1) the defendant would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed." Id. at 800-01 (citing Lafler v. Cooper, 566 U.S. 156, 164 (Tenn. 2012)).

The post-conviction court specifically found that the Petitioner did not provide credible testimony that he was unaware he could be subject to consecutive sentencing if he proceeded to trial. The court specifically noted that trial counsel, prior to trial, placed on the record that he had advised the Petitioner to accept the State's favorable offer, which resolved all of the Petitioner's cases in exchange for him testifying against his codefendants, and the Petitioner informed the trial court that he wanted to proceed to trial. The post-conviction court found that "[t]he emphasis on the plea deal resolving all potential cases against the Petitioner certainly points to some consideration of potentially consecutive sentences" and that the Petitioner "was certainly aware of the possibility of consecutive sentences based upon his recent experience in General Sessions Court." It held that even though trial counsel was deceased and therefore unable to explain his actions concerning the plea at the post-conviction hearing, the Petitioner had failed to establish by clear and convincing evidence that trial counsel was deficient in the advice he gave to the Petitioner concerning the State's plea offer and the potential consequences to proceeding to trial. The post-conviction court also held that the Petitioner failed to show that he would have accepted the plea.

The evidence does not preponderate against the credibility determinations and factual findings made by the post-conviction court. The record clearly shows that the Petitioner chose to reject the State's offer because it required him to testify against his codefendants, which he was unwilling to do. Because the Petitioner has failed to establish that trial counsel was deficient in the advice he gave concerning the plea offer and the potential consequences of proceeding to trial and has failed to show that this alleged deficiency resulted in prejudice to him, he is not entitled to relief on this issue.

**Elicitation of Detrimental Testimony.** The Petitioner also contends that trial counsel was ineffective in eliciting the damaging admission from him at the suppression hearing that he was a shooter at the scene. He claims that because trial counsel "took no measures to proactively address [the damaging testimony's] use and admission at trial," Investigator Wardlaw was able to testify at trial that the Petitioner admitted during the suppression hearing that he was a shooter. The Petitioner contends that trial counsel's performance on this issue was both deficient and prejudicial because the State was able to use his damaging admission against him at trial "to substantiate the charges and to corroborate [his] extrajudicial statements." He claims that had trial counsel not elicited this damaging admission, the outcome of his trial would likely have been different because his admission was the "most significant evidence implicating [him] as a shooter at Wilder Place on August 15, 2012."

During his October 2012 interview with police, the Petitioner admitted to not only driving the shooters to the August 13, 2012 and the August 15, 2012 shootings but also to firing shots while at the scene of the August 15, 2012 shooting. Prior to trial, the

- 17 -

Petitioner filed a motion to suppress all the statements he made to police in October 2012 on the basis that they were the result of threats or coercion. The Petitioner specifically claimed that he confessed to being a shooter only after the police told him he would be raped in prison.

At the suppression hearing, Investigator Wardlaw testified that during the October 2012 interview, the Petitioner initially stated that he drove the shooters to the Wilder Place residence but later admitted that he "actually did shoot there." On redirect examination during this hearing, the Petitioner provided the following testimony:

[Trial counsel]: Is the driver in trouble, in your mind, at that time?

[The Petitioner]: No, sir.

[Trial counsel]: So to you, saying, I drove, but I didn't know what's going to happen, that's not really admitting involvement, in your mind, is it?

[The Petitioner]: No. Right. Correct.

[Trial counsel]: And that's what you said [during the interview] in August?

[The Petitioner]: Correct.

[Trial counsel]: And then, after hearing this rape stuff [from the police], you started saying, okay, maybe I'm the shooter?

[The Petitioner]: Correct.

Immediately thereafter, the Petitioner provided the following testimony to the State during recross-examination:

[The State]: And now, [Petitioner], I just want to make sure I heard that correctly. Are you telling us that you are admitting to shooting into D[evante] Nail's house [at Wilder Place]?

[The Petitioner]: Yes, sir. I mean, yes, ma'am.

- 18 -

| | |
|---|---|
| [The State]: | And in August [2012], you admitted that you were the driver— |
| [The Petitioner]: | Yes, ma'am. |
| [The State]: | —of the vehicle?<br>And you're telling us that in October [2012], you admitted to shooting? |
| [The Petitioner]: | Yes, ma'am. |
| [The State]: | Both times or just once? |
| [The Petitioner]: | Just once. |

We conclude that trial counsel's questioning of the Petitioner, which prompted his admission to the State that he was a shooter, was not deficient. At the time this testimony was elicited, the Petitioner had already admitted during his October 2012 interview that he was one of the shooters, which prompted trial counsel to file a motion to suppress. The suppression hearing transcript shows that trial counsel questioned the Petitioner about the police's coercive tactics before asking the Petitioner whether he confessed to firing shots at the scene because of this coercion. Trial counsel's questioning was aimed at establishing that the Petitioner's admission to being one of the shooters was involuntary because he was coerced by the police. Under these circumstances, we conclude that trial counsel was not deficient in questioning the Petitioner about his previous admission to police that he fired a gun.

However, we do conclude trial counsel was deficient in failing to proactively address the use and admission at trial of the Petitioner's testimony at the suppression hearing, including his confession to being a shooter. Trial counsel could have easily requested a ruling from the trial court that any testimony provided by the Petitioner at the suppression hearing could not be used to determine his guilt and could only be used for the purpose of determining whether his statement should be suppressed. This could have been done at the beginning of the suppression hearing or after the Petitioner made his admission to being a shooter. Obtaining such an order would have prevented the State from having Investigator Wardlaw testify at trial about the Petitioner's admission at the suppression hearing. Although trial counsel likely believed the State would seek to admit the Petitioner's October 2012 interview to police, which included his admission to being one of the shooters, we conclude that trial counsel was, in fact, deficient in failing to prevent the State from using whatever admissions the Petitioner made at the suppression hearing.

- 19 -

However, we conclude that trial counsel's deficiency did not result in prejudice to the Petitioner. In light of the Petitioner's multiple admissions that he drove the shooters to the scene and the fact that the jury was instructed on criminal responsibility, we conclude that the Petitioner has failed to establish a reasonable probability that, but for trial counsel's conduct regarding this admission, the outcome of trial would have been different. Although we will more fully discuss this issue in the next section of this opinion, the Petitioner's multiple admissions that he drove the shooters to the scene were more than sufficiently corroborated by other evidence presented by the State at trial, including the testimony from Brittaney Nail, Officer Hopkins, Investigator Chas Terry, and Patricia Resig. Because the Petitioner has failed to establish that trial counsel's performance as to this issue was prejudicial, he is not entitled to relief.

**Failing to Object to Investigator Wardlaw's Testimony.** The Petitioner next argues that trial counsel was ineffective in failing to object to Investigator Wardlaw's testimony at trial concerning the Petitioner's admission during the suppression hearing that he was a shooter. The Petitioner contends that trial counsel's failure to object was both deficient and prejudicial because, without Investigator Wardlaw's testimony about the Petitioner's admission, the State would have been unable to corroborate his extrajudicial confession. He also asserts that the theory of criminal responsibility does not preclude a conclusion of prejudice because the jury rejected the State's theory of criminal responsibility for the shooting on August 13, 2012, for which he did not confess to firing a gun.

At trial, the State asked Investigator Wardlaw what the Petitioner testified to on May 2, 2013, the date of the Petitioner's suppression hearing. Investigator Wardlaw replied that the Petitioner had admitted at that hearing that he was one of the shooters. The State then asked if the Petitioner's admission at the hearing was consistent with what the Petitioner had told him in October 2012, and Investigator Wardlaw surprisingly stated that it was different because in October 2012, the Petitioner only admitted to being the driver and never admitted to being a shooter.

In denying relief on this issue, the post-conviction court acknowledged that trial counsel's failure to object was deficient but concluded that such deficiency was not prejudicial because "the State ha[d] sufficiently corroborated the Petitioner's statement to police completely independent of [the Petitioner's] suppression hearing testimony." In particular, the post-conviction court referenced Brittaney Nail's testimony regarding the problems between Devante Nail and the Petitioner and the evidence showing that multiple shootings had occurred because of an "ongoing conflict between Mr. Nail and the Petitioner," which established a "motive for the Petitioner to commit the crime." Moreover, the post-conviction court, recognizing that the jury had been instructed on the

- 20 -

theory of criminal responsibility, found that "[e]ven if there was no proof that the Petitioner fired a weapon, he had clearly admitted many times that he participated as a driver." Accordingly, the court held that "[t]his proof would be sufficient to support the convictions even if the Petitioner did not fire a gun."

On direct appeal, the Petitioner argued that there was no evidence to corroborate his confessions, and the State countered that the confessions were corroborated by the Petitioner's admission at the suppression hearing that he was a shooter. Carlos Campbell, 2015 WL 6155893, at *16. When considering this issue, this court noted that the Petitioner, at the suppression hearing, admitted not only that he was present for the shootings but also that he fired shots and that this admission required no independent corroboration:

> Under Tennessee law, "a person cannot be convicted solely on the basis of an uncorroborated extrajudicial confession." State v. Bishop, 431 S.W.3d 22, 61 (Tenn. 2014). However, "[a] statement made under oath in open court . . . requires no independent corroboration." Id. "An infrajudicial statement can therefore serve as corroboration for an extrajudicial one." Id. (citing 7 John H. Wigmore, Evidence § 2071, at 524 (Chadbourn Rev. 1978)). Here, the Defendant testified at the suppression hearing that he was not only present for the shootings but actually shot at the house on Wilder Place.

Id. The court then recognized that when a defendant testifies at a suppression hearing to assert a constitutional right, that testimony may not be admitted against him at trial on the issue of guilt unless the defendant fails to make an objection:

> When a defendant testifies at a pretrial hearing in an attempt to vindicate a constitutional right "his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Simmons v. United States, 390 U.S. 377, 394 (1968) (emphasis added) (regarding testimony to support a suppression motion on Fourth Amendment grounds); see also United States v. Garcia, 721 F.2d 721, 723 (11th Cir.1983) (applying Simmons to a pre-trial double jeopardy hearing).

Id. at *17. Applying this law to the facts of the Petitioner's case, the court then held, "Trial counsel made no objection to Inv[estigator] Wardlaw's testimony regarding the [Petitioner's] confession during his suppression hearing testimony; therefore, those statements could be used to corroborate the [Petitioner's] extrajudicial confessions." Id.

After reviewing the record, we agree with the post-conviction court's conclusion that trial counsel was deficient in failing to object to Investigator Wardlaw's testimony concerning the Petitioner's admission. The court specifically noted that "had an objection been made by counsel," Investigator Wardlaw's testimony would have been "disallowed." Under these circumstances, we believe that trial counsel should have objected and asked for a mistrial when the State elicited Investigator Wardlaw's testimony regarding the Petitioner's admission from the suppression hearing. Having determined that trial counsel was deficient on this issue, we must next consider whether trial counsel's failure to object to Investigator Wardlaw's testimony was prejudicial.

First, the Petitioner argues that trial counsel's failure to object was prejudicial because had he objected, Investigator Wardlaw's testimony would not have been admissible against him to corroborate his extrajudicial confessions made to police during his interviews. He claims that without Investigator Wardlaw's testimony, there was insufficient independent evidence presented at trial to corroborate his admission to police during his interviews that he drove the shooters to the scene on August 15, 2012. We disagree.

We reiterate that "a person cannot be convicted solely on the basis of an uncorroborated extrajudicial confession." Bishop, 431 S.W.3d at 61. The Tennessee Supreme Court, in adopting the modified trustworthiness corroboration test for extrajudicial confessions, stated:

> When a defendant challenges the admission of his extrajudicial confession on lack-of-corroboration grounds, the trial court should begin by asking whether the charged offense is one that involves a tangible injury. If the answer is yes, then the State must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, plus independent prima facie evidence that the injury actually occurred. If the answer is no, then the State must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, and the evidence must link the defendant to the crime.

Id. at 58-59 (footnotes omitted).

We do not believe that the two counts of attempted first degree murder against Brittaney Nail and Darlessa Clemons or one count of employment of a firearm associated with the August 15, 2012 shooting involved a tangible injury. Accordingly, the State was required to provide substantial independent evidence tending to show that the Petitioner's statement is trustworthy, and the evidence must sufficiently link the Petitioner to the crime.

At trial, the State presented the Petitioner's statement to police that he had driven the shooters to the Wilder Place residence on August 13, 2012 and August 15, 2012. Brittaney Nail testified that on August 15, 2012, she was watching movies with Darlessa Clemons inside the Wilder Place residence when numerous bullets pierced the drywall of her home. Ms. Nail said that she told the 9-1-1 operator that the Petitioner was responsible for the August 15, 2012 shooting because Clemons had told her that she heard the Petitioner's name "a lot in conversation." Ms. Nail added that she knew the Petitioner and Devante Nail "had something between each other." Officer Hopkins testified that upon his arrival, he noticed that the inside of the Wilder Place residence "was riddled with gunshots" and "there were pieces of drywall just scattered all over the place." He stated that Darlessa Clemons had "a through and through hole in her shirt" and a "scratch mark" on her back where he opined that a bullet had nearly struck her. Investigator Chas Terry testified that he observed "numerous bullet holes throughout the entire house." Patricia Resig, an expert in firearm identification, opined that three guns had been used during the August 15, 2012 shooting. Numerous photographs were admitted showing the bullet holes and damage that these bullets caused to the residence, the hole in Clemons' shirt, and Clemons' injury. Although the Petitioner contends that Nail and Clemons were biased against him because they knew about the feud between the Petitioner and Devante Nail and had reason to embellish or fabricate evidence against him, we conclude that all of the aforementioned evidence, when viewed together, tends to show that the Petitioner's admission to driving the shooters on August 13, 2012 and August 15, 2012 was trustworthy. We also conclude that there was sufficient evidence linking the Petitioner to the crime.

Because the Petitioner's multiple admissions to driving the shooters were presented and because an instruction on criminal responsibility was given, a rational jury could have found the Petitioner's guilty of attempted first degree murder for the August 15, 2012 shooting under the theory of criminal responsibility, even if Investigator Wardlaw had not testified regarding the Petitioner's admission at the suppression hearing that he was a shooter. Accordingly, we conclude that the trial counsel's failure to object to Investigator Wardlaw's testimony was not prejudicial.

Second, the Petitioner asserts that the post-conviction court's reliance on criminal responsibility in concluding there was no prejudice was erroneous, given that "the jury rejected the State's theory of criminal responsibility for the shootings on August 13, 2012[,] for which there was no confession to discharging a firearm." The Petitioner asserts that the only difference between the charges associated with the August 13, 2012 shooting, for which the Petitioner was acquitted of the attempted murder and employment of a firearm charges, and the charges associated with the August 15, 2012 shooting, for which he was convicted of two counts of attempted first degree murder and one count of

- 23 -

employment of a firearm, was Investigator Wardlaw's testimony concerning his admission during the suppression hearing that he fired shots. The Petitioner asserts that "the jury verdicts alone are demonstrative of the impact of [his] confession on the outcome of trial." He claims that based on these verdicts, "there is a reasonable probability that but for trial counsel's failure to object to the introduction of [his] confession at the suppression hearing, the result of trial would have been different." Once again, we disagree with the Petitioner.

We believe the Petitioner over-emphasizes the significance of Investigator Wardlaw's testimony about his confession at the suppression hearing. Given the evidence presented at trial, a rational jury could have found that because the two gunshots at the residence did not penetrate the interior of the home and because no one was injured during the August 13, 2012 shooting, it was unreasonable to find the Petitioner guilty of anything greater than misdemeanor reckless endangerment. A jury could have easily found that compared to the injuries to person and property associated with the August 15, 2012 shooting, the August 13, 2012 shooting was much less serious. Because there was substantial independent evidence, other than Investigator's Wardlaw's testimony about the Petitioner's confession at the suppression hearing, that tended to show that the Petitioner's statement that he drove the shooters to the scene was trustworthy and that sufficiently linked the Petitioner to the crime, we conclude that the Petitioner has failed to show that trial counsel's deficiency on this issue was prejudicial.

**Severance.** The Petitioner also contends that trial counsel was ineffective in not seeking to sever the charges associated with the August 15, 2012 shooting from the charges associated with the August 13, 2012 shooting. He asserts that trial counsel's failure to request a severance was both deficient and prejudicial because it allowed the jury to infer guilt based on his propensity to commit crimes against the alleged victims in this case.

In its order denying relief, the post-conviction court held that both the August 13, 2012 shooting and August 15, 2012 shooting occurred because of an ongoing feud between the Petitioner and Davante Nail and, therefore, were "part of a larger, continuing plan or conspiracy." The court referenced its Rule 404(b) ruling, wherein it held that although the evidence of the August 13, 2012 shooting and the August 15, 2012 shooting would be admissible in this trial, the evidence from other incidents was excluded. The court also held that proof regarding these two shootings would have been admissible in each case had there been separate trials. Finally, the court held that this evidence was relevant to the material issue of the Petitioner's motive or intent for the shootings and that that the danger of unfair prejudice did not outweigh its probative value. The post-conviction court also held that even if trial counsel had requested a severance, this request would have been denied. Consequently, the court held that the Petitioner had

failed to establish that trial counsel's performance on this issue was deficient and prejudicial.

Tennessee Rule of Criminal Procedure 8 provides for both mandatory and permissive joinder of offenses. Two or more offenses shall be mandatorily joined in the same indictment, presentment, or information if the offenses are: "(A) based on the same conduct or arise from the same criminal episode; (B) within the jurisdiction of a single court; and (C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s)." Tenn. R. Crim. P. 8(a)(1). In addition, two or more offenses may be permissively joined in the same indictment, presentment, or information if "(1) the offenses constitute parts of a common scheme or plan; or (2) they are of the same or similar character." Tenn. R. Crim. P. 8(b).

A trial court's decision "to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) [is] to be reviewed for an abuse of discretion." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). In the event that the offenses were permissively joined, "the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others." Tenn. R. Crim. P. 14(b)(1). In the event that the offenses were mandatorily joined, the State or the defendant may file a motion for severance before trial, and the court must grant this request if "the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2)(A). A trial court must determine whether joinder was mandatory or permissive before deciding whether to grant or deny a motion to sever.

Pursuant to Rule 8(a)(1)(A), two or more offenses shall be mandatorily joined in the same indictment if the offenses are "based on the same conduct or arise from the same criminal episode[.]" Tenn. R. Crim. P. 8(a)(1)(A). Offenses based on the same conduct involve "a single act that results in a number of interrelated offenses." State v. Johnson, 342 S.W.3d 468, 473 (Tenn. 2011). On the other hand, offenses that arise from the same criminal episode "'normally are generated by separate physical actions.'" Id. at 474 (quoting 2 ABA Standards for Criminal Justice § 13-1.2 cmt., at 13.10). These separate physical actions "must occur simultaneously or in close sequence and must occur in the same place or in closely situated places." Id. at 475. A gap in time between these actions "may be sufficient to interrupt the temporal proximity required for a single criminal episode to exist." Id. (citing David L. Raybin, Tennessee Criminal Practice and Procedure § 17:17, at 601).

Here, because there was a gap in time of two days between the shootings, we, like the post-conviction court, conclude that offenses associated with the August 13, 2012

shooting and the offenses associated with the August 15, 2012 shooting were subject to permissive joinder.  See Tenn. R. Crim. P. 8(b).

The Petitioner, quoting State v. Adams, 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992), asserts that "the suggestion of shared motivation for two otherwise separate crimes is insufficient under 8(b) and 14(b)(1) to establish a [']common scheme or plan.[']" However, the record shows these two shootings were part of a common scheme or plan because they occurred at the same location, took place only two days apart, and were committed because of the ongoing feud between the Petitioner and Devante Nail. Moreover, because evidence of each shooting was relevant to the material issue of the Petitioner's motive and intent to retaliate against Devante Nail, evidence of the first shooting would have been admissible in the trial of the second shooting, and vice versa. Because these shootings were part of a common scheme or plan and because evidence of one shooting would have been admissible in the trial of the other shooting, the Petitioner did not have a right to sever the August 13, 2012 offenses from the August 15, 2012 offenses.  See Tenn. R. Crim. P. 14(b)(1).  This conclusion coincides with the post-conviction court's finding that even if trial counsel had requested a severance, it would have been denied.  Consequently, we conclude the Petitioner has not established that trial counsel's failure to request a severance was deficient.  The Petitioner has also failed to establish a reasonable probability that, had a motion to sever been filed, the outcome of his trial would have been different.  Accordingly, the Petitioner is not entitled to relief on this issue.

**Missing Witness Instruction.**  In addition, the Petitioner argues that trial counsel was ineffective in not requesting a missing witness instruction for Devante Nail, Lakeshia Reynolds, Darlessa Clemons, and Tamichael Bennett, who were not called by the State to testify at trial.  He asserts that trial counsel's failure to request this instruction, thereby emphasizing that these witnesses may have been unfavorable had they been presented by the State, meant that trial counsel never challenged the strength of the State's case, especially Darlessa Clemons' purported injury.

Tennessee Pattern Jury Instruction 42.16, generally known as the missing witness instruction, provides in pertinent part:

> When it is within the power of the state or the defendant to produce a witness who possesses peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is available fails to call such witness, an inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness.  Whether there was such a witness and whether such an inference

- 26 -

has arisen is for you to decide and if so, you are to determine what weight it shall be given.

7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 42.16 (2018 ed.) (footnote omitted). This instruction explains that if a party fails to call a particular witness, an inference may be drawn that had the witness testified, the testimony would have been unfavorable to that party. State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984).

In denying relief, the post-conviction court found that although trial counsel did not request a missing witness instruction, he argued several times during closing argument that the absence of these witnesses should make the jury question the State's case. The court, recognizing that Devante Nail had also engaged in criminal behavior, found that the missing witnesses were never cooperative with the State or the investigators and that these witnesses were not peculiarly available to the State over the Petitioner. Finally, the court concluded that because the record did not support the inclusion of the missing witness instruction, the Petitioner had failed to show that trial counsel was deficient in not requesting this instruction.

The Petitioner asserts that the equally available provision simply means that "a witness would be as likely to be favorable to one party as the other." See David L. Raybin, Tennessee Criminal Practice and Procedure § 30:17 (2008-09 ed.) (stating that "where it can be established that a witness is biased against a party and favorable to the other party, the missing witness rule might apply notwithstanding that the witness could arguably be summoned by either side"). The Petitioner contends that because Devante Nail, Lakeshia Reynolds, Darlessa Clemons, and Tamichael Bennett were obviously biased against him, trial counsel should have filed a written request for the missing witness instruction.

The Tennessee Supreme Court has held that in order for the missing witness instruction to be appropriate, "the evidence must show that the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). However, this rule is not without limits:

The mere fact that a party fails to produce a particular person who may have some knowledge of the facts involved does not justify application of the inference against him. However, when it can be said "with reasonable assurance that it would have been natural for a party to have called the absent witness but for some apprehension about his testimony," an

- 27 -

> inference may be drawn by the jury that the testimony would have been unfavorable.

*Francis*, 669 S.W.2d at 88-89 (footnote and citation omitted).  In addition, the missing witness instruction is inappropriate "where the only object of calling such witness would be to produce corroborative, cumulative, or possibly unnecessary evidence[.]" *Dickey v. McCord*, 63 S.W.3d 714, 721 (Tenn. Ct. App. 2001)).

We conclude that any testimony offered by Devante Nail, Lakeshia Reynolds, Darlessa Clemons, and Tamichael Bennett would have been cumulative to the testimony offered by Brittaney Nail.  Because the record does not show that the aforementioned witnesses "had unique or otherwise essential information from which a negative inference might be drawn about the State's proof," *State v. Melvin Crump*, No. M2006-02244-CCA-R3-CD, 2009 WL 723524, at *42 (Tenn. Crim. App. Mar. 18, 2009), the missing witness instruction was inapplicable, and trial counsel was not deficient in failing to request such an instruction.  Moreover, as recognized by the post-conviction court, trial counsel argued multiple times during closing argument that the absence of these witnesses should make the jury question the State's case.  Consequently, the Petitioner has also failed to show that trial counsel's failure to request the missing witness instruction prejudiced his case.  Accordingly, he is not entitled to relief on this issue.

**Solicitation Instruction.**  The Petitioner also asserts that trial counsel was ineffective in failing to make a written request for an instruction for solicitation of first degree murder.  He claims trial counsel's failure to request the instruction on solicitation, which is a lesser included offense of attempted first degree murder, was both deficient and prejudicial because a reasonable jury "could have inferred from the evidence that [he] solicited Mr. Lagrone and Mr. Brown to attempt to commit a criminal offense by driving the individuals to the house on Wilder Place."

Although the post-conviction court recognized that solicitation of first degree murder is a lesser included offense of attempted first degree murder, it found that there "was no evidence presented that the Petitioner in any way commanded, requested, or attempted to command or request that someone else commit a criminal offense."  The court held that because it would have been improper to instruct the jury on solicitation of first degree murder based on the evidence presented at trial, the Petitioner had failed to establish that trial counsel was deficient in failing to request such an instruction.

A conviction for solicitation of an offense may lie where a person "by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense . . . with the intent that the criminal offense be committed . . . ." Tenn. Code Ann. § 39-12-102(a).  Even if an

offense qualifies as a lesser included offense, "the trial court still must determine whether the evidence in the particular case merits a jury instruction for that lesser[]included offense." State v. Thorpe, 463 S.W.3d 851, 859 (Tenn. 2015) (citing State v. Burns, 6 S.W.3d 453, 467 (Tenn. 1999)).

The Petitioner contends that his trial testimony that he drove two other people to the Wilder Place home shows that he commanded, requested, or hired individuals to commit a criminal offense. However, we disagree. At trial, the State presented proof showing that the Petitioner had committed the offenses of attempted first degree murder based on his own conduct, or alternatively, based on the conduct of his codefendants pursuant to a theory of criminal responsibility. See Tenn. Code Ann. § 39-11-402(a)(2) ("A person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]"). In response, the Petitioner argued that the State had not met its burden of proof, that the shots fired during the first incident were aimed at the cars and not the residence, and that the Petitioner lacked the intent to murder anyone because he thought no one was home at the time of the second shooting. No proof was presented that the codefendants fired shots on August 13, 2012 and August 15, 2012 at the Petitioner's request or that the Petitioner did not participate in the offenses. Because the record is devoid of proof supporting a solicitation of first degree murder instruction, the Petitioner has not established that trial counsel's failure to seek a solicitation instruction was deficient or that he was prejudiced by this alleged deficiency.

**Mitigation at Sentencing.** The Petitioner additionally argues that trial counsel was ineffective in failing to present evidence or argument in support of mitigation at his sentencing hearing. Specifically, he claims that trial counsel was deficient in failing to inform him of the State's notice of its intent to seek enhanced punishment, in failing to submit a sentencing memorandum, in failing to argue against the State's request for seven enhancement factors and for consecutive sentencing, in failing to present any witnesses, evidence, or argument at the sentencing hearing, and in failing to argue for the mitigating factors that he played only a minor role in the commission of one of the offenses and that he lacked substantial judgment in committing the offenses because of his youth. The Petitioner asserts that trial counsel's aforementioned deficiencies were prejudicial because the trial court sentenced him to an effective sentence of forty-six years.

Although the post-conviction court found trial counsel did not file a sentencing memorandum or present additional evidence at the sentencing hearing, it noted that trial counsel did argue that the Petitioner did not have an intent to injure the victims, that the Petitioner did not fire shots during the first shooting, and that the Petitioner should be granted leniency because of his young age at the time of the offenses. The court also

recognized that trial counsel had the Petitioner give an allocution during the sentencing hearing. The post-conviction court held that the enhancement factors outweighed any mitigating factors and that consecutive sentences were warranted in the Petitioner's case. Significantly, the court concluded that because the Petitioner failed to present any evidence during the post-conviction hearing regarding the proof or argument that trial counsel should have presented, the Petitioner has failed to establish that trial counsel's performance was deficient.

The record shows that trial counsel, who corrected the presentence investigation report to show that the Petitioner was nineteen rather than twenty-nine, argued that the trial court should consider the Petitioner's youth as a mitigation factor, especially given that he did not have "support from [his] mother or father at all." In addition, trial counsel vehemently argued against the application of the enhancement factor (9), that he possessed or employed a firearm during the commission of the offense, on the basis that the Petitioner was already "being hammered for it in the charge itself." See id. § 40-35-114(9). He argued that employing a firearm is "part and parcel" of the offense of attempted first degree murder and is "encompassed in a rather severe sentence for the attempted first" conviction. He also asserted that this enhancement factor should not apply because the Petitioner was convicted of employing a firearm that resulted in "an additional mandatory consecutive 85 percent sentence." Trial counsel asserted that the Petitioner's employment of a firearm was being "double and triple" counted in this case. In addition, trial counsel asserted that enhancement factor (10), that the Petitioner had no hesitation about committing a crime when the risk to human life was high, was inapplicable to the attempted first degree murder convictions because it was "part of the charge" and "goes with the territory." See id. § 40-35-114(10). Additionally, trial counsel argued that the Petitioner lacked the intent required for the two attempted first degree murder convictions, given that he told the police he "didn't want to shoot anybody." He also asserted that because the Petitioner was receiving a mandatory consecutive sentence for the firearm charge, concurrent sentencing was appropriate because the Petitioner was going to receive "enough time to learn better ways to get rehabilitated in prison even at a minimum sentence." Trial counsel maintained that it would be "financially beneficial for all concerned" for the "low end [of the sentence to] be imposed by the Court[,]" which was "still a very significant sentence." Finally, trial counsel also ensured that the Petitioner made an allocution in which he said that he "was truly sorry for what happened," that he "didn't shoot on the second time," and that he did not "have the heart to hurt anybody."

We conclude that the Petitioner has failed to show that trial counsel's conduct at the sentencing hearing fell "below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369. Moreover, because the Petitioner presented no evidence at the post-conviction hearing of what mitigating proof

or argument trial counsel should have presented at his sentencing hearing, we conclude that he has has failed to establish that he was prejudiced by trial counsel's performance. Accordingly, he is not entitled to relief on this issue.

**Motion for New Trial.**  In addition, the Petitioner contends that trial counsel was ineffective in failing to include a Rule 404(b) issue regarding the Petitioner's prior acts in his motion for new trial, which meant that it was subject to plain error review on direct appeal.  He asserts that trial counsel was deficient in failing to properly preserve this issue on appeal and counsel's deficiency prejudiced him because it prevented him from receiving relief on appeal.

The record shows that several days prior to trial, trial counsel filed a motion for an order prohibiting the State from using portions of the Petitioner's statements to police detectives which referred to "other crimes, alleged bad acts, and ongoing investigations." Carlos Campbell, 2015 WL 6155893, at *15.  Immediately prior to the start of trial, the trial court ruled that the prior bad acts contained within the fifty-three-minute excerpt of the Petitioner's statement offered by the State at trial were "directly related" to the Petitioner's "motive and . . . intent" to commit the charged offenses in the instant case. The court held that because the "probative value as to motive/intent" outweighed any "danger of unfair prejudice," the challenged portions of the statement were admissible at trial.  Later, after the excerpt of the Petitioner's October 2012 statement was played to the jury, trial counsel renewed his objection and asked for a mistrial because the excerpted statement contained references to the uncharged robbery of Devante Nail's younger brother and to an officer receiving messages on Twitter indicating that the Petitioner was responsible for criminal acts.  The trial court overruled the objection and denied the motion for a mistrial.  First, the court ruled that the officer's statements regarding the messages he received on Twitter were admissible because they concerned the Petitioner being responsible for the first shooting, for which the Petitioner was on trial.  Second, the court reaffirmed its earlier ruling, stating that the references to the robbery of Devante Nail's brother went "directly to motive and intent" because the robbery explained why the charged offenses at issue in this trial occurred.

When this court reviewed the Rule 404(b) issue for plain error on direct appeal, it held as follows:

> While evidence of a person's prior bad acts are not admissible to prove his character and to show that his actions were in conformity with that character, see Tennessee Rule of Evidence 404(b), otherwise inadmissible conduct may be offered to prove the motive of the defendant or intent. See State v. Toliver, 117 S.W.3d 216, 230 (Tenn. 2003).  Here, there was an ongoing feud between the Defendant and Mr. Nail.  We agree with the trial

court's conclusion that the robbery of Mr. Nail's brother was one of several precipitating events in this feud that led to the shootings and was admissible to establish the [Petitioner's] motive and intent. As such, plain error review of this issue is not warranted.

Id. at *16.

Although the post-conviction court held that trial counsel was deficient in not raising the Rule 404(b) issue in the motion for new trial, it concluded that the Petitioner had failed to establish that trial counsel's deficiency was prejudicial in light of this court's conclusion that the robbery of Devante Nail's brother was admissible to show the Petitioner's motive and intent to commit the charged offenses in this case.

In evaluating this issue, we recognize that although trial counsel filed the motion for new trial, trial counsel passed away in a single car accident before filing the Petitioner's brief on direct appeal, and appellate counsel filed the brief and chose the issues to be presented on appeal. Because trial counsel was deceased at the time of the post-conviction hearing, he was unable to testify about why he did not include the Rule 404(b) issue in the Petitioner's motion for new trial, and the Petitioner failed to present any evidence showing that trial counsel's failure to include this issue was deficient. Because the record is devoid of any proof on this issue, we conclude that the Petitioner failed to provide clear and convincing evidence establishing that counsel's omission of the Rule 404(b) issue in the motion for new trial was deficient. As to whether trial counsel's alleged deficiency was prejudicial, we wholeheartedly agree with the post-conviction court's determination that the robbery of Devante Nail's brother was admissible to show the Petitioner's motive and intent to commit the charged offenses, precludes a conclusion of prejudice. Because the Petitioner has failed to establish that trial counsel's performance on this issue was deficient and this deficiency was prejudicial, he is not entitled to relief.

**No Cumulative Error.** The Petitioner also claims that the cumulative effect of all of trial counsel's errors deprived him of the effective assistance of counsel. The cumulative error doctrine "is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). However, the circumstances that would warrant a reversal of a conviction or sentence "remain rare." Id. Although we concluded that trial counsel was deficient on two issues raised by the Petitioner, we also held that these deficiencies were not prejudicial. In light of the overwhelming evidence of the Petitioner's guilt in the form of his multiple admissions that he drove to both the

- 32 -

shootings, and therefore was criminally responsible for the offenses, the Petitioner has failed to demonstrate that the cumulative effect of trial counsel's errors was so great as to require reversal. Accordingly, we conclude that the Petitioner is not entitled to relief.

**II. State Presenting Proof and Argument at Hearing.** Finally, the Petitioner contends that the post-conviction court erred in allowing the State to present proof and argument at the post-conviction hearing after the State failed to file a response to his post-conviction petition. He asserts that the post-conviction court's erroneous ruling deprived him of a fair hearing, incentivized the State to violate the rules, and gave the State an unfair tactical advantage because it did not have to disclose its legal position prior to the post-conviction hearing. The Petitioner seeks a new post-conviction hearing where the State is required to file a response or is precluded from presenting proof and argument. In response, the State asserts that the Petitioner has failed provide any law to support his claim that the appropriate sanction was to preclude the State from arguing or offering evidence, especially in light of Rule 28, which does not require the imposition of sanctions. See Tenn. Sup. Ct. R. 28, §5. We conclude that the Petitioner is not entitled to relief on this issue.

At the post-conviction hearing, the Petitioner objected to the State's introduction of certified copies of his judgments for warrants 997935 and 1013362 and its presentation of testimony from Gary Lamb on the basis that the State had violated Tennessee Supreme Court Rule 28. When the Petitioner specifically asked that the trial court sanction the State by precluding it from presenting any proof at the post-conviction hearing, the trial court replied:

> Well, I don't think that['s] the appropriate remedy—the [S]tate should have filed a written response . . . . I don't think the appropriate remedy would be to deny [the State] the opportunity to present evidence in response to the proof that was presented through [the Petitioner] last week. So I'm gonna admit the sessions warrants, as well as take judicial notice of the technical record, [and] allow [the State] to present proof.

The Tennessee Post-Conviction Procedure Act states that the "district attorney shall represent the state and file an answer or other responsive pleading within thirty (30) days[.]" Tenn. Code Ann. § 40-30-108(a); see Tenn. Sup. Ct. R. 28, §5(G). However, the State's failure to file an answer, as contemplated, "shall not entitle petitioner to relief without proof, but may result in the imposition of sanctions in the exercise of the trial judge's discretion." Tenn. Sup. Ct. R. 28, §5(I); see Tenn. Code Ann. § 40-30-108(a) ("Failure by the state to timely respond does not entitle the petitioner to relief under the Post-Conviction Procedure Act.").

- 33 -

The record shows that the State did not file a written response to the post-conviction petition. However, the post-conviction court, in exercising its discretion, held that it would be inappropriate to issue a sanction that prevented the State from offering proof and argument at the post-conviction hearing. While we believe that the State's failure to file a written answer to the post-conviction petition was unconscionable, we recognize that decisions regarding whether to impose sanctions and which sanctions to impose are left to the discretion of the post-conviction court. See Tenn. Sup. Ct. R. 28, § 5(I). Based on this record, we cannot conclude that the post-conviction court abused its discretion in allowing the State to present evidence at the post-conviction hearing. We recognize that the State did not offer any unexpected proof at the evidentiary hearing, see Clifford Leon Farra v. State, No. E2005-00963-CCA-R3-PC, 2006 WL 859202, at *3 (Tenn. Crim. App. Apr. 3, 2006), and that the Petitioner has not shown he was prejudiced by the State's failure to file a written response to his petition. Consequently, we conclude that the Petitioner is not entitled to relief on this issue.

## CONCLUSION

Based on the aforementioned authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE